Page 1

1
2   UNITED STATES BANKRUPTCY COURT
3   EASTERN DISTRICT OF NEW YORK
4   Case No. 11-42390-jbr
5   - - - - - - - - - - - - - - - - - - - - -x
6   In the Matter of:
7
8   IMAGE RENT A CAR, INC.,
9
10              Debtor.
11
12  - - - - - - - - - - - - - - - - - - - - -x
13
14              United States Bankruptcy Court
15              271 Cadman Plaza East
16              Brooklyn, New York
17
18              September 21, 2011
19              2:07 PM
20
21  B E F O R E:
22  HON. JOEL B. ROSENTHAL
23  U.S. BANKRUPTCY JUDGE
24
25

1

2    Matter:  [15] Amended Motion for 2004 Examination Filed by

3    Daniel Gershburg on Behalf of Digby Adler Group LLC dba

4    Bandago.   **Debtor's Objection Filed on 8/8** Reply Affirmation

5    Filed on 8/24**

25    Transcribed by:  Aliza Chodoff

```
 1
 2   A P P E A R A N C E S :
 3   THE LAW OFFICES OF JOSEPH Y. BALISOK
 4        Attorney for Debtor
 5        1650 Eastern Parkway
 6        Suite 303
 7        Brooklyn, NY 11233
 8
 9   BY:  JOSEPH Y. BALISOK, ESQ.
10
11
12   GERSHBURG
13        Attorney for Digby Adler Group
14        1400 Avenue Z
15        Suite 402
16        Brooklyn, NY 11235
17
18   BY:  DANIEL GERSHBURG, ESQ.
19
20
21
22
23
24
25
```

```
 1                     P R O C E E D I N G S
 2            THE CLERK:  Matter number 79; Image Rent A Car, Inc.
 3            THE COURT:  Let's take both of these together; the
 4   Image and the Van.  I think the issues are the same, are they
 5   not?
 6            MR. BALISOK:  Yes.
 7            MR. GERSHBURG:  That's correct, Your Honor.
 8            THE COURT:  All right.  Please, let me have the
 9   appearances.
10            MR. GERSHBURG:  Good afternoon, Your Honor.  Daniel
11   Gershburg, for the creditor Digby Adler Group dba.  Actually,
12   we'll just leave it as Digby Adler Group.
13            THE COURT:  Okay.
14            MR. BALISOK:  Joseph Balisok, attorney for the debtor;
15   Van Rental and Image Rent A Car.
16            THE COURT:  All right.  I'll hear the moving party.
17   You can be seated.  Use the podium, please.
18            MR. GERSHBURG:  Yes, Your Honor.  Your Honor, this is
19   our motion for a 2004 examination.  We -- just to give you some
20   context, we filed suit against the debtors in this case in a
21   separate action in California.  Amongst the claims were
22   trademark infringement, cybersquatting, et cetera.  About a
23   year after we filed this case, the debtors moved and filed for
24   Chapter 7 bankruptcy; both Image and Van.
25            The issues are quite similar between both, and there's
```

1  wild inconsistencies in terms of the testimony given at the 341

2  meeting.

3           THE COURT:  Wild inconsistencies from what?

4           MR. GERSHBURG:  The debtors had an individual by the

5  name of Gad Seebag (ph.), who filed an affidavit with the court

6  in California stating that he was the president of Image and

7  CEO of Image.

8           THE COURT:  All right.  So the discovery in California

9  was inconsistent with what they've been testifying to --

10          MR. GERSHBURG:  Completely --

11          THE COURT:  -- here?

12          MR. GERSHBURG:  -- inconsistent.

13          THE COURT:  Okay.

14          MR. GERSHBURG:  We have no proof that the individual

15 who signed as a president of Image is actually the president of

16 Image.  During the time that I had to ask questions of the

17 debtors during a 341, there was no questions that were actually

18 answered at all.  In other words, the representative couldn't

19 state when he became president.  He couldn't state when the

20 company stopped operating.  He couldn't state what happened to

21 numerous amounts of assets, including twenty-four vehicles

22 which were listed on the company's website at the time of the

23 filing.

24          He literally couldn't state anything at all.  And he

25 had stated that Gad Seebag, who was the individual who had

1   filed the affidavit in the California court, had transferred
2   this company over to him and had paid 300,000 dollars at one
3   point into this company.  There's no proof of any of this.
4   There's no bank statements.  There's absolutely nothing.  It
5   absolutely affects our interest in our case in California in
6   terms of this case.  And we believe based on the
7   representations that were made and literally any lack of any
8   documents as well as the petition that was filed, which lists
9   no assets whatsoever, no transfers whatsoever, and nothing to
10  suggest why the creditors are owed X number of dollars or when
11  these occurred that there's reason for --
12          THE COURT:  Well, the --
13          MR. GERSHBURG:  -- a 2004 --
14          THE COURT:  -- the debtor says you folks couldn't --
15  have no standing; that you're not a creditor.
16          MR. GERSHBURG:  Well, Your Honor, the debtor's
17  attorney lists us as creditors.  We commenced our action well
18  in advance of the bankruptcy filing, so it was the debtor's
19  attorney himself who listed us as a creditor.  We cannot list
20  the amount that we claim we owe because it's --
21          THE COURT:  Well, you don't have to.  You can be an
22  unliquidated creditor, but you can still be a creditor.
23          MR. GERSHBURG:  Correct.  We still are a creditor, and
24  it was listed specifically by the debtor's counsel in both
25  cases.

1             THE COURT:  All right, let me hear from him.  Mr.

2    Balisok.

3             MR. BALISOK:  May it please the Court, my name is

4    Joseph Balisok, as I mentioned earlier.  And I'm -- filed the

5    motion to quash Bandago's application for the 2004 meeting.

6    And I think I pretty well stated it in my -- in the motion.  I

7    wanted some things today.

8             THE COURT:  Well, fir -- let's deal with the question

9    I just asked your brother.  You've -- you stated here that

10   they're not a creditor, yet they have an action pending

11   claiming damages in California.  And you listed them as a

12   creditor.  How much more than that do they need to at least get

13   over the -- they don't -- the 2004 does not say they have to

14   have an allowed claim.  It says they have to have a claim.  So

15   why --

16            MR. BALISOK:  Right.

17            THE COURT:  Have they -- don't they at least have

18   standing under 2004 to take a -- an exam?

19            MR. BALISOK:  Well, any party-in-interest -- the

20   question then seems pretty much undefined in the law what a

21   party-in-interest is.

22            THE COURT:  Well, how did you list them?

23            MR. BALISOK:  I listed them on the schedule with all

24   the other creditors, and I put zero dollars owing because my

25   client believes, and he stated it in the 341(a), that it was a

1   frivolous lawsuit.  And he believes that, as he stated rather

2   rudely, but --

3              THE COURT:  All defendants --

4              MR. BALISOK:  -- he said corporate --

5              THE COURT:  -- think the lawsuits -- a defendant of

6   the -- that's why they're called defendants, and -- but

7   shockingly, defendants lose sometimes.

8              MR. BALISOK:  Well, the problem is, is that the

9   plaintiffs in the action chose to litigate the case in

10  California.  My client, of course, is in New York state, New

11  York City specifically.

12             THE COURT:  But they're going to have to take the 2004

13  here.  I'm not going to make the debtor go to California.

14  He's -- you're not claiming that they're inconvenienced by

15  having to go in their own city to --

16             MR. BALISOK:  Oh, no.  It's just the -- my client

17  simply didn't have the resources to even start really properly

18  fighting the case in California.  And that's why --

19             THE COURT:  Well, apparently they have jurisdiction

20  over me for some reason.  I don't know why, but they do.

21             MR. BALISOK:  So --

22             THE COURT:  So -- but that's not what this is about.

23  This is about the 2004 examination.  So tell me concisely why I

24  should not let them take the 2004.  I've heard enough on the

25  question of whether they're a claimant or a party-in-interest;

1   whatever reasons, if any, exist.
2           MR. BALISOK:  Okay.  So in Six Bankruptcy Law, Edition
3   Rules Commentary Analysis that I quoted in my motion, it
4   specifies there than an examination under Rule 2004 will not be
5   permitted where the Court determines while the entity seeking
6   the examination is generally entitled to the Rules of Broad
7   Utility the circumstances do not justify the granting of a
8   motion to conduct such an examination.  And more specifically,
9   2004 specifically says that the Court may -- and it uses the
10  may -- it's really a discretionary --
11          THE COURT:  Well, tell me why I shouldn't -- why I
12  should exercise my discretion in favor of the debtor as opposed
13  to the people that have a claim, or claim that they have a
14  claim against him?
15          MR. BALISOK:  Absolutely.  So --
16          THE COURT:  Or them.
17          MR. BALISOK:  -- there's a few reasons.  First, New
18  York state has dissolved both corporations unilaterally.  They
19  have chosen, for whatever reason -- it's not clear --
20          THE COURT:  Well, you're in Chapter 7, so I don't care
21  what the corporate world has done to them.  They are in
22  existence as far as I'm concerned.  Keep going.
23          MR. BALISOK:  Okay.  I guess the more important thing
24  is here the trustee is not present.  He hasn't objected.  He
25  hasn't raised any questions.  All the issues with regard to the

1  bank statements not being provided, that was specifically to
2  Bandago.  We provided everything to the trustee.  The trustee
3  hired an accountant.  The trustee hired outside counsel to
4  review everything.  And as of today, I spoke to Mr. Messer
5  about a few weeks, but it seems like he has no specific
6  questions that would give rise to him either coming in and
7  supporting Bandago or whether or not to request his own 2004.
8           And that, I think, is pertinent.  As I mentioned in my
9  motion; that where a trustee is not interested and where he
10 feels that everything is fine with the action, it -- I wouldn't
11 say creates presumption, but it does lean in favor, I think, of
12 stating that the debtor is honest, but obviously unfortunate,
13 because he's poor.
14           But the next point --
15           THE COURT:  But there -- but the 2004 doesn't really
16 support that.  If it -- if that's what Congress and the Rules
17 Committee in the Supreme Court wanted, then one would presume
18 that that would -- there'd be some suggestion in the rule, but
19 the rule doesn't say that.
20           MR. BALISOK:  Right.
21           THE COURT:  The rule gives creditors --
22           MR. BALISOK:  Right.  And the commentary analysis
23 seems to allow for a multifactoral or pronged analysis that a
24 court can use to decide whether or not to grant.  So I guess
25 the additional elements -- that was just one of them.  The

1  additional is that Shneior Zilberman, the current president of

2  Image Rent A Car or the current president of the nonentity --

3  of the dissolved entity, he had signed the petition saying that

4  he was president.  Mr. Gershburg keeps referring to

5  inconsistencies.  Those inconsistencies were -- I've not been

6  provided a copy, just as an aside.  but those inconsistencies

7  predate the filing of the petition, and there's no --

8        THE COURT:  Well, the truth usually doesn't change,

9  though.

10        MR. BALISOK:  But the president of a corporation with

11  really unsavvy, I would call, business people, the roles and

12  titles and the people in charge of a corporation moves around

13  quite a bit.  Mr. Seebag initially entered the corporation as

14  the sole investor.  He deposited 300,000.  It's reflected in

15  the bank account that was given to the trustee.  Subsequently

16  to that point -- or simultaneously, Shneior star -- Mr.

17  Zilberman started operating the corporation, and he ran the

18  corporation until 2010 when it ran out of money and essentially

19  it closed.  Operations ceased doing business.

20        So although initially maybe Gad had signed it, he put

21  the 300,000, it seems like he wanted to have his name on it to

22  protect his interest.  But subsequently, when things went bad,

23  Shneior took over complete control.  He had been controlling up

24  to that point, and Mr. Seebag didn't -- he obviously gave away

25  his interest.  These people -- Mr. Zilberman; he doesn't really

1   have a high school diploma, as far as I can tell, Mr. Seebag

2   neither does he.  They didn't have counsel opening up the

3   company.  They were not given advice what a president is.  Mr.

4   Seebag has --

5           THE COURT:  All right.

6           MR. BALISOK:  -- relinquished his interest.

7           THE COURT:  You've --

8           MR. BALISOK:  It doesn't -- this whole thing kind of

9   doesn't make any sense, I understand --

10          THE COURT:  Well --

11          MR. BALISOK:  -- without a back story.

12          THE COURT:  -- well -- but that's what the -- if

13  that's the case, if that's what the 2004 shows, that's fine.

14          MR. BALISOK:  Okay.  So --

15          THE COURT:  But I haven't heard anything from you yet

16  that tells me that they're not entitled to the benefits of Rule

17  2004.

18          MR. BALISOK:  Well, the claims that Mr. Gershburg

19  seems -- is making on behalf of Bandago were answered in the

20  341(a).  He keeps mentioning that Image Rent A Car has vans for

21  sale.  He's not alleging that the vans were owned by Image.

22  He's not -- he's just saying that they --

23          THE COURT:  All right, enough.

24          MR. BALISOK:  -- have this, so --

25          THE COURT:  Enough.  You're missing the point.  I'm

1   not prejudging what's going to come out of the 2004.  I'm just

2   trying to answer the threshold question; why they shouldn't get

3   the opportunity to ask questions.  It may be inconvenient.

4            MR. BALISOK:  Expensive.

5            THE COURT:  It may be expensive for you, but that's

6   one of the prices you pay when you end up in bankruptcy.  I'm

7   going to grant the motions, but I'm going to instruct the

8   counsel.  Invite the trustee if he wants to come and

9   participate.  I don't want these people to have to go through

10  it twice.  So if the trustee wants to be there and wants to ask

11  questions, at least take care of it all at one time.  And I'm

12  going to -- I've signed the orders, and good luck.  Thank you.

13           MR. GERSHBURG:  Yes, Your Honor.

14           MR. BALISOK:  Thank you, Your Honor.

15       (Whereupon these proceedings were concluded at 2:19 PM)

1
2                              **I N D E X**
3
4                              **RULINGS**
5                                                    **Page      Line**
6    [15] Amended Motion for 2004 Examination         13         7
7    Filed by Daniel Gershburg on Behalf of Digby
8    Adler Group LLC dba Bandago Granted
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2                           C E R T I F I C A T I O N

3

4    I, Aliza Chodoff, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9    _____

10   ALIZA CHODOFF

11   AAERT Certified Electronic Transcriber CET**D-634

12

13   Veritext

14   200 Old Country Road

15   Suite 580

16   Mineola, NY 11501

17

18   Date:  February 13, 2012

19

20

21

22

23

24

25