1

2   UNITED STATES BANKRUPTCY COURT

3   EASTERN DISTRICT OF NEW YORK

4   Case No. 11-42390-jbr

5   - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   IMAGE RENT A CAR, INC.,

9

10              Debtor.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              271 Cadman Plaza East

16              Brooklyn, New York

17

18              February 6, 2012

19              2:22 PM

20

21  B E F O R E:

22  HON. JOEL B. ROSENTHAL

23  U.S. BANKRUPTCY JUDGE

24

25

1

2    Matter: [29] Amended Notice of Motion (RE: related document(s)

3    [28] Motion to Compel Discovery Filed by Daniel Gershburg on

4    behalf of Digby Adler Group LLC dba Bandago.  **[33] Debtor's

5    Objection, [34] Transcript of Hearing, [35] Exhibit A,

6    [36]Exhibit B, [37]Amended Objection filed on 1/30

7

8

9

10

11

12

13

14

15

16

17

18

19

20    Transcribed by:  Sharona Shapiro

21    eScribers, LLC

22    700 West 192nd Street, Suite #607

23    New York, NY 10040

24    (973)406-2250

25    operations@escribers.net

```
 1

 2   A P P E A R A N C E S :

 3   THE LAW OFFICES OF JOSEPH Y. BALISOK

 4        Attorneys for Debtor

 5        1650 Eastern Parkway

 6        Suite 303

 7        Brooklyn, NY 11233

 8

 9   BY:   JOSEPH Y.  BALISOK, ESQ.

10

11   GERSHBURG

12        Attorney for Digby Adler Group

13        1400 Avenue Z

14        Suite 402

15        Brooklyn, NY 11235

16

17   BY:   DANIEL GERSHBURG, ESQ.

18

19

20

21

22

23

24

25
```

IMAGE RENT A CAR, INC.

1              P R O C E E D I N G S

2              THE CLERK:  Matter number 53 in the case of Image

3    Rent A Car, Inc.

4              MR. GERSHBURG:  Good afternoon, Your Honor.  Daniel

5    Gershburg, representing Digby Adler Group, who is a creditor in

6    this Chapter 7 proceeding.  Image Rent A Car is the debtor.

7              Your Honor --

8              THE COURT:  Whoa, let me get the rest of the

9    appearances.  Slow down, counsel.

10             MR. BALISOK:  Good afternoon, Your Honor.  My name is

11   Joseph Balisok.  I'm the attorney for the debtor.

12             THE COURT:  Go ahead.

13             MR. GERSHBURG:  Your Honor, this is a motion

14   compelling discovery pursuant to Rule 7037.  Just a little

15   background on the case --

16             THE COURT:  I don't need background; I remember this

17   case.

18             MR. GERSHBURG:  Ah, very good, Your Honor.  To this

19   date, we have not received many, if not most, of the documents

20   that were called for in the order that you signed, Your Honor,

21   specifically, tax returns, which were in fact filed, which the

22   debtor's counsel and the debtor affirmed to the Court were

23   never filed at any point.  And we know this based on the

24   documents that were produced to us from the debtor and debtor's

25   counsel, bank records which have specific missing statements

IMAGE RENT A CAR, INC.

1    evidencing large sums of money that were deposited into other

2    accounts of insiders as well as direct deposit statements about

3    a year prior.  There's not one sales receipt, not one rental

4    receipt, no credit card receipt --

5            THE COURT:  Where did this company do business?

6            MR. GERSHBURG:  I'm sorry, Your Honor?

7            THE COURT:  Where did this company do business?

8            MR. GERSHBURG:  Brooklyn, Your Honor --

9            THE COURT:  Okay, go ahead.

10           MR. GERSHBURG:  -- for seven years.  There is not one

11   receipt of any vehicle that's been rented, any vehicle that's

12   been sold, absolutely no business transactions whatsoever for

13   the period of seven years.

14           The debtor claims that they provided us with bylaws,

15   which they never have provided us with any bylaws.  In fact,

16   there's no documents whatsoever evidencing the fact that the

17   person who signed the petition as the president, Mr. Shneior

18   Zilberman, is in fact or was ever in fact the president of the

19   debtor corporation.

20           There's also not one document -- they list 800,000

21   dollars in liabilities in Schedule F.  They failed to produce

22   one document, one invoice, anything showing one dollar that is

23   owed to any of these people.  And in fact, many of these people

24   are insiders, brother-in-law, former business partners.  The

25   business was transferred to a former partner as well.

IMAGE RENT A CAR, INC.

1          In the 2004 examination, the first day of it, which

2     happened on November 29th, the debtor states that he found

3     documents but he didn't turn them over because he didn't deem

4     them to be relevant or appropriate.  This is on page 92.  Those

5     documents include receipts for cars and gas, client

6     information, information regarding credit cards, licenses,

7     et cetera.

8          When I asked the debtor if he was ever listed as vice

9     president of Image, after an objection from counsel he says

10    either yes or no but what is certain is that maybe.  So we've

11    had a pretty tough time at it in terms of getting any --

12         THE COURT:  Well, let me ask you a question.  What's

13    the end game here?

14         MR. GERSHBURG:  Well --

15         THE COURT:  I know you have litigation pending in

16    California.

17         MR. GERSHBURG:  Yes.

18         THE COURT:  But this is a Chapter 7 debtor.

19         MR. GERSHBURG:  Yes.

20         THE COURT:  So what are you trying to accomplish with

21    this 2004 examination at this point?

22         MR. GERSHBURG:  We believe that hundreds of thousands

23    of dollars were transferred to insiders.  The debtor himself

24    has this money, because if you look at where this money was

25    transferred, it goes to former business partners, family

IMAGE RENT A CAR, INC.

1    members, et cetera, and it happens right before that action

2    takes place.

3          THE COURT:  And this is not your cause of action, this

4    would be the estate's cause of action?

5          MR. GERSHBURG:  Well, that's correct, Your Honor, but

6    with respect to this bankruptcy filing, we believe that the

7    actual petition contains glaring inaccuracies and everything

8    was completely misrepresented in the petition itself.

9          In the 341 examination which we came to and we

10   questioned the debtor on the record, debtor's counsel stated

11   that he amended the petition itself to include certain things

12   in the statement of financial affairs which should have been

13   there.  That never took place until last night at 5 p.m. after

14   we issued our reply.  They refused to even show up for a second

15   day of examination of the 2004 after four hours of the first

16   day.  There's a litany of e-mails from myself to debtor's

17   counsel where debtor's counsel claims he can't show up for more

18   than two months from the time this happened.

19         THE COURT:  Right, I read that, but that time's now

20   past, so --

21         MR. GERSHBURG:  Right, correct, Your Honor.  And in

22   the debtor's objection he also makes misrepresentations as to

23   whether -- he states that he never agreed to the second day.

24   We simply want -- you know, when in fact they did, based on the

25   clear language of the e-mails themselves.  I mean, he's just

IMAGE RENT A CAR, INC.

1    misrepresenting to the Court specifically what took place.

2        We want an opportunity, like any creditor, to find out

3    where this money went.  There aren't any other creditors, by

4    the way.  The other creditors that are listed are all insiders,

5    and there's no -- there's no --

6        THE COURT:  Wouldn't you be better off spending your

7    time examining the financial institutions that cleared those

8    accounts and had those funds?

9        MR. GERSHBURG:  We'd love to, Your Honor, except the

10   documents that they provided us don't encompass the Bank of

11   America statements, for instance.  They claim they provided us

12   Bank of America statements.  Debtor's counsel states this,

13   represents this.

14       THE COURT:  So you know the accounts were with Bank of

15   America?

16       MR. GERSHBURG:  No, we don't, because they've never

17   been provided to us --

18       THE COURT:  Okay.

19       MR. GERSHBURG:  -- at all.  I mean, we're trying, in

20   any sort --

21       THE COURT:  Where's the trustee?  Who's the trustee in

22   this?

23       MR. GERSHBURG:  Mr. Messer.

24       THE COURT:  And what's he doing about any of this?

25       MR. GERSHBURG:  Well, after the first 2004 -- first of

IMAGE RENT A CAR, INC.

1    all, we contacted Mr. Messer after you had instructed us to on

2    the first day.  They -- after the first 2004 examination the

3    first day, we contacted Sal LaMonica's office, who represents

4    the trustees, and they are now very interested in this and

5    they'd like to likely appear on the second date of the 2004

6    examination because glaringly -- I mean, the papers

7    themselves --

8            THE COURT:  Okay, I get the message.

9            MR. GERSHBURG:  Yep.

10            THE COURT:  Let me hear from the other side.

11            MR. BALISOK:  Thank you, Your Honor.  There was a

12    reply to my objection filed Friday night at 10 p.m.,

13    approximately, and I was not provided with a faxed copy; I

14    didn't have any notice of the reply.  I did have a chance this

15    morning to look at it and I have prepared an answer to some of

16    the --

17            THE COURT:  You know, I'm -- I, frankly, don't have

18    time for this baloney.

19            MR. BALISOK:  Okay, so I'll cut to the chase, Your

20    Honor.

21            THE COURT:  This is a discovery dispute.

22            MR. BALISOK:  It's very --

23            THE COURT:  They're entitled to the discovery.

24            MR. BALISOK:  Yes, Your Honor, however, they're not

25    entitled to something that doesn't exist.  We've given them

IMAGE RENT A CAR, INC.

1  everything we have.

2        THE COURT:  Then give them an affidavit --

3        MR. BALISOK:  I did, Your Honor.

4        THE COURT:  -- that it doesn't exist.

5        MR. BALISOK:  I did, Your Honor.  I brought it to the

6  Court.  I told them under oath.  We went to the 341 meeting.

7  We said under oath every single thing.  I keep repeating it

8  again and again and again and it completely falls on deaf ears.

9        Your Honor, if I might just point out a simple fact.

10  The last time we were here you said you were not going to

11  pre-judge the 2004 examination.  I'm not asking you to -- a

12  simple glance at the 2004 will show you that all of these

13  questions in the reply Digby Adler Group chose not to ask in

14  the first 2004.  They chose to go back fifteen years, ask

15  questions about management, which frankly, nobody remembers.

16  Mr. Zilberman was bewildered, confused, frankly, extremely

17  stressed out by the disrespect, the laughs, yelling at Mr.

18  Zilberman, constantly telling him yes or no, you have to answer

19  yes or no, you can't answer the way you're answering.  I can

20  rebut every single allegation he's making.

21        Let me just point out a simple fact that all the proof

22  which I have proffered is admissible evidence.  Every single

23  allegation made is purely -- purely, on the part of Digby Adler

24  Group, supposition, inference, theories.  The trustee, when I

25  spoke to him, Your Honor, told me that he was not interested in

IMAGE RENT A CAR, INC.

1    coming to the 2004, it cost too much, if they wanted to do it,

2    let them go ahead and do it.  If the trustee wanted to, he

3    could have come.

4           At 4:30 in the afternoon -- I told my client we were

5    going to be there till 7:30, minimum -- 4:30 in the afternoon

6    he tells us he's done, he's finished, we're going to do it

7    later.  My client never consented.  I may have tried to

8    negotiate with my client something.  In all my e-mails, if you

9    see, it says I'm trying to arrange some type of understanding.

10   But Digby Adler Group chose, by itself without any prompting

11   from me, to refuse any of my efforts.  And what I finally

12   remembered, to be honest -- I don't have -- we did not have the

13   burden to produce the work for Digby Adler Group.

14          When I finally got a copy of the transcript, it was

15   clear as day, Your Honor, you said examination, you said let

16   them be there, we don't want to do it twice.  I said that to

17   Mr. Gershburg; deaf ears.  I told him I've given you everything

18   I have, I've given an affidavit, do you want -- you know, what

19   more can I give you?  Deaf ears.

20          I finally told my client, I begged him to go back and

21   to do everything possible thing he could.  He finally found a

22   piece of evidence which reflected he was president.  I get an

23   e-mail from Digby Adler Group:  Thank you very much, but it's

24   not what I wanted.  You're right it's not what you wanted.  I

25   don't have what you want.  If I had what you wanted I would

IMAGE RENT A CAR, INC.

1    have given it to you.  We would have given it to you in the

2    first place.

3           On October -- and Your Honor, on October -- I have all

4    the e-mails.  I have a copy of everything.  On Monday, October

5    21st, 2011, I sent Digby Adler Group 288 pages, copies of the

6    Chase Manhattan Bank, plus 98 additional pages, plus 77

7    additional pages.  I thought perhaps he was confused; maybe he

8    couldn't open the e-mail.  So today I re-produced all of those.

9    I opened up in Adobe, I reproduced it into one document, I

10   attached it separately again.  I'm giving them everything they

11   want.  I'm not getting paid a nickel for my work.  I'm doing

12   everything possible we can, and no matter what I do there's

13   always something else they're not happy with.

14          Your Honor, he told me at the 2004 that he was going

15   to apply to this Court to get another three days and he was

16   going to get it.  The last thing --

17          THE COURT:  How many days?

18          MR. BALISOK:  Three more days of depositions.  The

19   last thing he told me before he walked out of the court, Your

20   Honor, before he walked out of the deposition, he told me I'm

21   not going to stop, no matter what you do, I'm going to catch

22   it.  I'll sign an affidavit under -- affidavit under per --

23   affidavit to exactly what I'm stating right here.

24          Your Honor, my client went -- in his reply he asks for

25   four -- he asks five questions.  He didn't ask those questions

IMAGE RENT A CAR, INC.

1    during the 2004, didn't ask them to the 341.  My client went to

2    the 341.  We went outside of the 341 for two hours, maybe even

3    three -- the exact amount I don't recall -- to the trustee.  We

4    sat with him.  We went over every single thing.  I gave him a

5    copy of every bank statement.  I went over the tax transcript.

6    Your Honor, I didn't have to give the tax transcript.  We had

7    no obligation.  That's not what the order said.

8         I realized that it was confusing so I personally

9    called the IRS, I said please give me a copy of every

10   statement, just give me everything.  They said what do you

11   want?  I said please give me every possible thing.  Fax it to

12   me.  I got the fax into a PDF.  I converted it, saved it, and I

13   sent it directly to the Digby Adler Group.  I get an e-mail,

14   you filed a tax return, we want it.  I went to my client.  I

15   said:  Please, do you have it?  Did you do it?  He said, I

16   swear, I swear.  I said, listen, you're going to have to do it

17   under oath, you're going to have to give an affidavit.  He did,

18   Your Honor.  The Digby Adler Group is not happy.

19        I mean, I'm kind of at the point, Your Honor, where

20   I'm not really sure whether or not, and I say this in my

21   objection, whether or not the confusion is to -- his confus --

22   Digby Adler Group's confusion as to our obligation to produce

23   documents or whether or not they assumed that we're obligated

24   to give them the documents they want.  Either way, I have sent

25   everything repeatedly.  I have explained it to him on the

IMAGE RENT A CAR, INC.

1   phone.

2           THE COURT:  Let me just -- let's, so the record is

3   clear.  Every document that your client has that was sought

4   by -- in its 2004 has been provided?

5           MR. BALISOK:  Yes, Your Honor.  And any document which

6   might arguably have thought -- that one could argue might be

7   under the scope, possibly, in some connection, has also been

8   produced.

9           THE COURT:  Okay.  And the trustee has whatever

10  business records he's asked for?

11          MR. BALISOK:  Your Honor, we showed up --

12          THE COURT:  Just --

13          MR. BALISOK:  Yes, Your Honor.  Four weeks before the

14  341 I showed up with my client and we gave him everything --

15  everything.

16          THE COURT:  Okay.

17          MR. GERSHBURG:  Your Honor --

18          MR. BALISOK:  Just one --

19          THE COURT:  Let him finish, counsel.  I don't need

20  your interruptions.  There's no jury here.  Relax.

21          MR. BALISOK:  Right.  And Your Honor, I do apologize,

22  I am kind of flustered.  Frankly, I'm new at this.  But --

23          THE COURT:  That's okay.  You're doing fine.

24          MR. BALISOK:  Okay, thank you, Your Honor.  I

25  appreciate that.

IMAGE RENT A CAR, INC.

1       In the reply there was mention to the fact that there

2  was an amended statement of, what's it called, of financial

3  affairs that I told Digby Adler Group that we would submit.

4  When we had an obligation to produce a copy of the petition to

5  the trustee, I had met with the trustee and his accountant and

6  I had provided him already the amended version.  And when we

7  went to the 341 I told Mr. Gershburg, I said I've given it to

8  the U.S. -- to the trustee, if you would like a copy I can give

9  it to you.  He brought it to my point, I didn't upload it also

10 to the Court.  There was not an intent to hide anything.  I

11 gave it to the trustee already.  I did upload it yesterday.

12      And the other thing that I really wanted to make sure

13 to focus on was I may have written Chase Man -- Bank of

14 America, but the 300 or 400 documents that I produced of bank

15 statements may have been Chase, and I do realize I made the

16 mistake.  Mr. Gershburg was aware that I gave him about 350

17 documents.  He wasn't confused with regard to that.  If he had

18 asked me I would have been more than happy to tell him that I

19 made the mistake, but I guess I should do it on the record now

20 so that there's no confusion.  I made a mistake and I must have

21 given you Chase instead of Bank of America documents.

22      THE COURT:  Well, I'm confused now.  Is the bank --

23 the records, are they Chase -- is it Chase records that's

24 responsive or is it Bank of America?

25      MR. BALISOK:  Chase, Your Honor.

IMAGE RENT A CAR, INC.

1          THE COURT:  All right.  So he has those now?

2          MR. BALISOK:  Over 350 documents.

3          THE COURT:  So the misspeak -- to use a Mitt Romney

4     term -- the misspeak was you named the wrong bank?

5          MR. BALISOK:  Correct, Your Honor.

6          THE COURT:  Okay.  All right.  Thank you.

7          MR. BALISOK:  Thank you.

8          THE COURT:  I'll give you the last word, counsel.

9          MR. GERSHBURG:  Thank you, Your Honor.  I don't want

10    to waste this Court's time.  I'm sorry this is before the

11    Court, but --

12         THE COURT:  So am I.

13         MR. GERSHBURG:  -- but I have to say that he's

14    literally misrepresenting everything that took place.  And the

15    easiest way to show it to Your Honor is the fact that they

16    claim in an affidavit signed by Mr. Zilberman that they never

17    filed tax returns, IRS or state, but they did.  They filed ten

18    separate tax returns.

19         THE COURT:  So they now have obtained from the

20    government the transcript, because those were filed about ten

21    minutes of 2 today.

22         MR. GERSHBURG:  That's correct.  They've only obtained

23    the actual transcripts which were given to us before.  The

24    returns have not been produced and they claim they have never

25    filed any returns, in the papers, Your Honor.

IMAGE RENT A CAR, INC.

1          In addition to that, if I may --

2          THE COURT:  Well, let me ask you a question.

3          MR. GERSHBURG:  Yeah.

4          THE COURT:  Who -- obviously there were some returns

5     filed.  Now, I'm not sure if these were income tax returns.

6     Some of them look like they may have been payroll tax returns.

7     But be that as it may, if returns were filed, why is their

8     obligation to get them?

9          MR. GERSHBURG:  It is not, Your Honor.  We have every

10    desire to pay for these, but --

11         THE COURT:  So if they say they don't have them --

12         MR. GERSHBURG:  Right.

13         THE COURT:  -- isn't that the end of it?

14         MR. GERSHBURG:  No, Your Honor, if they're stating --

15    if the record itself reflects the fact that they did in fact

16    file them.  And it would be very easy to obtain them.  It would

17    take one call to the IRS.  I mean, this is a company that

18    grossed over --

19         THE COURT:  So why can't the trustee do that?

20         MR. GERSHBURG:  I don't know if the trustee is aware

21    of the fact that this actually took place, Your Honor.

22         THE COURT:  Do you have a phone?

23         MR. GERSHBURG:  Yes.

24         THE COURT:  I mean, the fact of the matter is their

25    burden is not to do all your work for you.  If the trustee has

IMAGE RENT A CAR, INC.

1    a perfect right to these returns, and if they've been lost or

2    mislaid, then the trustee can go to the IRS. You don't need

3    this debtor to do that.

4          MR. GERSHBURG: Your Honor, we're not looking for

5    that. It's just a pat --

6          THE COURT: Yes, you just told me you were.

7          MR. GERSHBURG: It's a pattern of trying to figure out

8    what's there so we can find it ourselves. For instance,

9    debtor's counsel just represented that it gave me every single

10   bank statement. He didn't. He didn't because --

11         THE COURT: You said that. He didn't say he gave you

12   every -- he said he gave you everything he had. But there is a

13   difference.

14         MR. GERSHBURG: I understand, Your Honor, but we

15   didn't know that, based on the fact that he wrote Bank of

16   America in the papers. And he --

17         THE COURT: All right, so now you know that that's

18   been fixed.

19         MR. GERSHBURG: I understand that. And as for the

20   second day of the 2004 examination, Your Honor, we had multiple

21   e-mails, multiple conversations about --

22         THE COURT: I read some of them. I read some of them.

23         MR. GERSHBURG: Right. And for him to state on the

24   record that --

25         THE COURT: Well, what do you say about this mocking

IMAGE RENT A CAR, INC.

1  and the nastiness and the way you -- I don't know whether it

2  was you or somebody in your office -- treated the debtor and

3  his counsel.

4          MR. GERSHBURG:  I would never treat the debtor in a

5  mocking fashion.  In fact, he was there with a Hebrew

6  interpreter.  We were trying to elicit a simple answer of:

7  Have you ever been the president of Image Rent A Car?  A simple

8  question as such, and he simply refused to answer these

9  questions, which required us to ask them again and again.  We

10  have no --

11          THE COURT:  So it seems to me -- if after reading

12  this, and you know I love you guys, you think that I've got

13  nothing to do but stay up all night every night and read this

14  junk that you file at the last minute.  After I read through

15  this stuff and decide whether -- if I decide there's going to

16  be another examination, it's obvious to me it's going to have

17  to take place in that room right there with a judge in

18  residence to deal with this stuff.  Because I'm not going to

19  have that sort of conduct.  I've never had anybody even suggest

20  that.  So the mere fact that he's suggesting it is troubling.

21          MR. GERSHBURG:  I understand that, Your Honor.  I'm

22  just simply stating that it's completely misrepresented, that

23  that did not take place -- that that did not actually take

24  place during that --

25          THE COURT:  Well, you understand that what you're

IMAGE RENT A CAR, INC.

1    basically calling is you're calling your brother a liar.

2         MR. GERSHBURG:  I am in fact saying he's

3    misrepresenting this, yes.

4         THE COURT:  Well, that's the same thing.

5         MR. GERSHBURG:  Yeah.

6         THE COURT:  All right.  Well, I'll see what -- I hope

7    some of this stuff is on the record, because if it is it's

8    going to be very easy to see.  I will take this matter under

9    advisement.  I will read the -- do not file anything else; I

10   will not read anything else.  I will read -- and then I will

11   enter an order.  And if there is going to be another hearing --

12   another day, and it will be here, you will be walked in without

13   your cell phones, without food or water, we will turn the heat

14   up and make you as uncomfortable as possible.  And you think

15   I'm kidding.  But I will take this matter under advisement and

16   give you my decision as soon as I can.  Thank you.

17        MR. GERSHBURG:  Thank you, Your Honor.

18        MR. BALISOK:  Thank you, Your Honor.

19        (Whereupon these proceedings were concluded at 2:39 PM)

20

21

22

23

24

25

1

2                         C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7

8

9

10   _____

11   SHARONA SHAPIRO

12   AAERT Certified Electronic Transcriber CET**D 492

13

14   eScribers

15   700 West 192nd Street, Suite #607

16   New York, NY 10040

17

18   Date:  March 10, 2012

19

20

21

22

23

24

25

**IMAGE RENT A CAR, INC.**

**1**

**10 (1)**
  9:12

**2**

**2 (1)**
  16:21
**2:39 (1)**
  20:19
**2004 (14)**
  6:1,21;7:15;8:25;9:2,
  5;10:11,12,14;11:1;
  12:14;13:1;14:4;18:20
**2011 (1)**
  12:5
**21st (1)**
  12:5
**288 (1)**
  12:5
**29th (1)**
  6:2

**3**

**300 (1)**
  15:14
**341 (7)**
  7:9;10:6;13:1,2,2;
  14:14;15:7
**350 (2)**
  15:16;16:2

**4**

**4:30 (2)**
  11:4,5
**400 (1)**
  15:14

**5**

**5 (1)**
  7:13
**53 (1)**
  4:2

**7**

**7 (2)**
  4:6;6:18
**7:30 (1)**
  11:5
**7037 (1)**
  4:14
**77 (1)**
  12:6

**8**

**800,000 (1)**

  5:20

**9**

**92 (1)**
  6:4
**98 (1)**
  12:6

**A**

**absolutely (1)**
  5:12
**accomplish (1)**
  6:20
**accountant (1)**
  15:5
**accounts (3)**
  5:2;8:8,14
**action (3)**
  7:1,3,4
**actual (1)**
  7:7;16:23
**actually (2)**
  17:21;19:23
**addition (1)**
  17:1
**additional (2)**
  12:6,7
**Adler (11)**
  4:5;10:13,23;11:10,
  13,23;12:5;13:13,18,22;
  15:3
**admissible (1)**
  10:22
**Adobe (1)**
  12:9
**advisement (2)**
  20:9,15
**affairs (2)**
  7:12;15:3
**affidavit (7)**
  10:2;11:18;12:22,22,
  23;13:17;16:16
**affirmed (1)**
  4:22
**afternoon (4)**
  4:4,10;11:4,5
**again (6)**
  10:8,8,8;12:10;19:9,9
**agreed (1)**
  7:23
**Ah (1)**
  4:18
**ahead (3)**
  4:12;5:9;11:2
**allegation (2)**
  10:20,23
**always (1)**
  12:13
**amended (3)**
  7:11;15:2,6
**America (7)**

  8:11,12,15;15:14,21,
  24;18:16
**amount (1)**
  13:3
**apologize (1)**
  14:21
**appear (1)**
  9:5
**appearances (1)**
  4:9
**apply (1)**
  12:15
**appreciate (1)**
  14:25
**appropriate (1)**
  6:4
**approximately (1)**
  9:13
**arguably (1)**
  14:6
**argue (1)**
  14:6
**arrange (1)**
  11:9
**assumed (1)**
  13:23
**attached (1)**
  12:10
**attorney (1)**
  4:11
**aware (2)**
  15:16;17:20

**B**

**back (2)**
  10:14;11:20
**background (2)**
  4:15,16
**BALISOK (20)**
  4:10,11;9:11,19,22,24;
  10:3,5;12:18;14:5,11,13,
  18,21,24;15:25;16:2,5,7;
  20:18
**baloney (1)**
  9:18
**bank (14)**
  4:25;8:10,12,14;12:6;
  13:5;15:13,14,21,22,24;
  16:4;18:10,15
**bankruptcy (1)**
  7:6
**based (3)**
  4:23;7:24;18:15
**basically (1)**
  20:1
**begged (1)**
  11:20
**better (1)**
  8:6
**bewildered (1)**
  10:16
**Brooklyn (1)**

  5:8
**brother (1)**
  20:1
**brother-in-law (1)**
  5:24
**brought (2)**
  10:5;15:9
**burden (2)**
  11:13;17:25
**business (7)**
  5:5,7,12,24,25;6:25;
  14:10
**bylaws (2)**
  5:14,15

**C**

**California (1)**
  6:16
**call (1)**
  17:17
**called (3)**
  4:20;13:9;15:2
**calling (2)**
  20:1,1
**came (1)**
  7:9
**can (7)**
  10:19;11:19;12:12;
  15:8;18:2,8;20:16
**Car (7)**
  4:3,6;19:7
**card (1)**
  5:4
**cards (1)**
  6:6
**cars (1)**
  6:5
**case (3)**
  4:2,15,17
**catch (1)**
  12:21
**cause (2)**
  7:3,4
**cell (1)**
  20:13
**certain (2)**
  6:10;7:11
**cetera (2)**
  6:7;7:1
**chance (1)**
  9:14
**Chapter (2)**
  4:6;6:18
**chase (8)**
  9:19;12:6;15:13,15,
  21,23,23,25
**chose (3)**
  10:13,14;11:10
**claim (3)**
  8:11;16:16,24
**claims (2)**
  5:14;7:17

**clear (3)**
  7:25;11:15;14:3
**cleared (1)**
  8:7
**CLERK (1)**
  4:2
**client (10)**
  6:5;11:4,7,8,20;12:24;
  13:1,14;14:3,14
**coming (1)**
  11:1
**company (3)**
  5:5,7;17:17
**compelling (1)**
  4:14
**completely (3)**
  7:8;10:8;19:22
**concluded (1)**
  20:19
**conduct (1)**
  19:19
**confus (1)**
  13:21
**confused (4)**
  10:16;12:7;15:17,22
**confusing (1)**
  13:8
**confusion (3)**
  13:21,22;15:20
**connection (1)**
  14:7
**consented (1)**
  11:7
**constantly (1)**
  10:18
**contacted (2)**
  9:1,3
**contains (1)**
  7:7
**conversations (1)**
  18:21
**converted (1)**
  13:12
**copies (1)**
  12:5
**copy (7)**
  9:13;11:14;12:4;13:5,
  9;15:4,8
**corporation (1)**
  5:19
**cost (1)**
  11:1
**counsel (12)**
  4:9,22,25;6:9;7:10,17,
  17;8:12;14:19;16:8;
  18:9;19:3
**COURT (61)**
  4:8,12,16,22;5:5,7,9;
  6:12,15,18,20;7:3,19;
  8:1,6,14,18,21,24;9:8,10,
  17,21,23;10:2,4,6;12:15,
  17,19;14:2,9,12,16,19,
  23;15:10,22;16:1,3,6,8,

**IMAGE RENT A CAR, INC.**

Case No. 11-42390-jbr
February 6, 2012

11,12,19;17:2,4,11,13,
19,22,24;18:6,11,17,22,
25;19:11,25;20:4,6
**Court's (1)**
16:10
**credit (2)**
5:4;6:6
**creditor (2)**
4:5;8:2
**creditors (2)**
8:3,4
**cut (1)**
9:19

**D**

**Daniel (1)**
4:4
**date (2)**
4:19;9:5
**day (9)**
6:1;7:15,16,23;9:2,3;
11:15;18:20;20:12
**days (3)**
12:15,17,18
**deaf (3)**
10:8;11:17,19
**deal (1)**
19:18
**debtor (14)**
4:6,11,22,24;5:14,19;
6:2,8,18,23;7:10;18:3;
19:2,4
**debtor's (8)**
4:22,24;7:10,16,17,22;
8:12;18:9
**decide (2)**
19:15,15
**decision (1)**
20:16
**deem (1)**
6:3
**deposit (1)**
5:2
**deposited (1)**
5:1
**deposition (1)**
12:20
**depositions (1)**
12:18
**desire (1)**
17:10
**difference (1)**
18:13
**Digby (11)**
4:5;10:13,23;11:10,
13,23;12:5;13:13,18,22;
15:3
**direct (1)**
5:2
**directly (1)**
13:13
**discovery (3)**

4:14;9:21,23
**dispute (1)**
9:21
**disrespect (1)**
10:17
**document (5)**
5:20,22;12:9;14:3,5
**documents (12)**
4:19,24;5:16;6:3,5;
8:10;13:23,24;15:14,17,
21;16:2
**dollar (1)**
5:22
**dollars (2)**
5:21;6:23
**done (1)**
11:6
**down (1)**
4:9
**during (2)**
13:1;19:24

**E**

**ears (3)**
10:8;11:17,19
**easiest (1)**
16:15
**easy (2)**
17:16;20:8
**efforts (1)**
11:11
**either (2)**
6:10;13:24
**elicit (1)**
19:6
**else (3)**
12:13;20:9,10
**e-mail (3)**
11:23;12:8;13:13
**e-mails (5)**
7:16,25;11:8;12:4;
18:21
**encompass (1)**
8:10
**end (2)**
6:13;17:13
**enter (1)**
20:11
**entitled (2)**
9:23,25
**estate's (1)**
7:4
**et (2)**
6:7;7:1
**even (3)**
7:14;13:2;19:19
**evidence (2)**
10:22;11:22
**evidencing (2)**
5:1,16
**exact (1)**
13:3

**exactly (1)**
12:23
**examination (10)**
6:1,21;7:9,15;9:2,6;
10:11;11:15;18:20;
19:16
**examining (1)**
8:7
**except (1)**
8:9
**exist (2)**
9:25;10:4
**explained (1)**
13:25
**extremely (1)**
10:16

**F**

**fact (19)**
4:21;5:15,16,18,18,23;
7:24;10:9,21;15:1;
16:15;17:15,15,21,24;
18:15;19:5,20;20:2
**failed (1)**
5:21
**falls (1)**
10:8
**family (1)**
6:25
**fashion (1)**
19:5
**Fax (2)**
13:11,12
**faxed (1)**
9:13
**fifteen (1)**
10:14
**figure (1)**
18:7
**file (3)**
17:16;19:14;20:9
**filed (10)**
4:21,23;9:12;13:14;
16:17,17,20,25;17:5,7
**filing (1)**
7:6
**finally (4)**
11:11,14,20,21
**financial (3)**
7:12;8:7;15:2
**find (2)**
8:2;18:8
**fine (1)**
14:23
**finish (1)**
14:19
**finished (1)**
11:6
**first (9)**
6:1;7:15;8:25,25;9:2,
2,3;10:14;12:2
**five (1)**

12:25
**fixed (1)**
18:18
**flustered (1)**
14:22
**focus (1)**
15:13
**food (1)**
20:13
**former (3)**
5:24,25;6:25
**found (2)**
6:2;11:21
**four (2)**
7:15;12:25;14:13
**frankly (4)**
9:17;10:15,16;14:22
**Friday (1)**
9:12
**funds (1)**
8:8

**G**

**game (1)**
6:13
**gas (1)**
6:5
**gave (7)**
13:4;14:14;15:11,16;
18:9,11,12
**GERSHBURG (42)**
4:4,5,13,18;5:6,8,10;
6:14,17,19,22;7:5,21;
8:9,16,19,23,25;9:9;
11:17;14:17;15:7,16;
16:9,13,22;17:3,9,12,14,
20,23;18:4,7,14,19,23;
19:4,21;20:2,5,17
**given (8)**
9:25;11:17,18;12:1,1;
15:7,21;16:23
**giving (1)**
12:10
**glance (1)**
10:12
**glaring (1)**
7:7
**glaringly (1)**
9:6
**goes (1)**
6:25
**Good (3)**
4:4,10,18
**government (1)**
16:20
**grossed (1)**
17:18
**Group (10)**
4:5;10:13,24;11:10,
13,23;12:5;13:13,18;
15:3
**Group's (1)**

13:22
**guess (1)**
15:19
**guys (1)**
19:12

**H**

**happened (2)**
6:2;7:18
**happens (1)**
7:1
**happy (3)**
12:13;13:18;15:18
**hear (1)**
9:10
**hearing (1)**
20:11
**heat (1)**
20:13
**Hebrew (1)**
19:5
**hide (1)**
15:10
**himself (1)**
6:23
**honest (1)**
11:12
**Honor (46)**
4:4,7,10,13,18,20;5:6,
8;7:5,21;8:9;9:11,20,24;
10:3,5,9,25;11:15;12:3,
14,20,24;13:6,18,19;
14:5,11,13,17,21,24;
15:25;16:5,9,15,25;17:9,
14,21;18:4,14,20;19:21;
20:17,18
**hope (1)**
20:6
**hours (2)**
7:15;13:2
**hundreds (1)**
6:22

**I**

**Image (4)**
4:2,6;6:9;19:7
**inaccuracies (1)**
7:7
**Inc (1)**
4:3
**include (2)**
6:5;7:11
**income (1)**
17:5
**inference (1)**
10:24
**information (2)**
6:6,6
**insiders (4)**
5:2,24;6:23;8:4
**instance (2)**

**IMAGE RENT A CAR, INC.**

8:11;18:8
**instead (1)**
  15:21
**institutions (1)**
  8:7
**instructed (1)**
  9:1
**intent (1)**
  15:10
**interested (2)**
  9:4;10:25
**interpreter (1)**
  19:6
**interruptions (1)**
  14:20
**into (3)**
  5:1;12:9;13:12
**invoice (1)**
  5:22
**IRS (4)**
  13:9;16:17;17:17;18:2
**issued (1)**
  7:14

**J**

**Joseph (1)**
  4:11
**judge (1)**
  19:17
**junk (1)**
  19:14
**jury (1)**
  14:20

**K**

**keep (1)**
  10:7
**kidding (1)**
  20:15
**kind (2)**
  13:19;14:22

**L**

**LaMonica's (1)**
  9:3
**language (1)**
  7:25
**large (1)**
  5:1
**last (6)**
  7:13;10:10;12:16,19;
  16:8;19:14
**later (1)**
  11:7
**laughs (1)**
  10:17
**liabilities (1)**
  5:21
**liar (1)**
  20:1

**licenses (1)**
  6:6
**likely (1)**
  9:5
**list (1)**
  5:20
**listed (2)**
  6:8;8:4
**listen (1)**
  13:16
**litany (1)**
  7:16
**literally (1)**
  16:14
**litigation (1)**
  6:15
**little (1)**
  4:14
**look (3)**
  6:24;9:15;17:6
**looking (1)**
  18:4
**lost (1)**
  18:1
**love (2)**
  8:9;19:12

**M**

**makes (1)**
  7:22
**making (1)**
  10:20
**Man (1)**
  15:13
**management (1)**
  10:15
**Manhattan (1)**
  12:6
**many (3)**
  4:19;5:23;12:17
**Matter (6)**
  4:2;12:12,21;17:24;
  20:8,15
**may (6)**
  11:7;15:13,15;17:1,6,
  7
**maybe (3)**
  6:10;12:7;13:2
**mean (6)**
  7:25;8:19;9:6;13:19;
  17:17,24
**meeting (1)**
  10:6
**members (1)**
  7:1
**mention (1)**
  15:1
**mere (1)**
  19:20
**message (1)**
  9:8
**Messer (2)**

8:23;9:1
**met (1)**
  15:5
**might (3)**
  10:9;14:6,6
**minimum (1)**
  11:5
**minute (1)**
  19:14
**minutes (1)**
  16:21
**mislaid (1)**
  18:2
**misrepresentations (1)**
  7:22
**misrepresented (2)**
  7:8;19:22
**misrepresenting (3)**
  8:1;16:14;20:3
**missing (1)**
  4:25
**misspeak (2)**
  16:3,4
**mistake (3)**
  15:16,19,20
**Mitt (1)**
  16:3
**mocking (2)**
  18:25;19:5
**Monday (1)**
  12:4
**money (4)**
  5:1;6:24,24;8:3
**months (1)**
  7:18
**more (4)**
  7:17;11:19;12:18;
  15:18
**morning (1)**
  9:15
**most (1)**
  4:19
**motion (1)**
  4:13
**much (2)**
  11:1,23
**multiple (2)**
  18:20,21
**must (1)**
  15:20
**myself (1)**
  7:16

**N**

**name (1)**
  4:10
**named (1)**
  16:4
**nastiness (1)**
  19:1
**need (3)**
  4:16;14:19;18:2

**negotiate (1)**
  11:8
**new (1)**
  14:22
**nickel (1)**
  12:11
**night (4)**
  7:13;9:12;19:13,13
**nobody (1)**
  10:15
**notice (1)**
  9:14
**November (1)**
  6:2
**number (1)**
  4:2

**O**

**oath (3)**
  10:6,7;13:17
**objection (4)**
  6:9;7:22;9:12;13:21
**obligated (1)**
  13:23
**obligation (4)**
  13:7,22;15:4;17:8
**obtain (1)**
  17:16
**obtained (2)**
  16:19,22
**obvious (1)**
  19:16
**obviously (1)**
  17:4
**October (3)**
  12:3,3,4
**off (1)**
  8:6
**office (2)**
  9:3;19:2
**one (11)**
  5:3,3,10,20,22,22,22;
  12:9;14:6,18;17:17
**only (1)**
  16:22
**open (1)**
  12:8
**opened (1)**
  12:9
**opportunity (1)**
  8:2
**order (3)**
  4:20;13:7;20:11
**ourselves (1)**
  18:8
**out (7)**
  8:2;10:9,17,21;12:19,
  20;18:7
**outside (1)**
  13:2
**over (5)**
  6:3;13:4,5;16:2;17:18

**owed (1)**
  5:23

**P**

**page (1)**
  6:4
**pages (3)**
  12:5,6,7
**paid (1)**
  12:11
**papers (3)**
  9:6;16:25;18:16
**part (1)**
  10:23
**partner (1)**
  5:25
**partners (2)**
  5:24;6:25
**past (1)**
  7:20
**pat (1)**
  18:5
**pattern (1)**
  18:7
**pay (1)**
  17:10
**payroll (1)**
  17:6
**PDF (1)**
  13:12
**pending (1)**
  6:15
**people (2)**
  5:23,23
**per (1)**
  12:22
**perfect (1)**
  18:1
**perhaps (1)**
  12:7
**period (1)**
  5:13
**person (1)**
  5:17
**personally (1)**
  13:8
**petition (5)**
  5:17;7:7,8,11;15:4
**phone (2)**
  14:1;17:22
**phones (1)**
  20:13
**piece (1)**
  11:22
**place (9)**
  7:2,13;8:1;12:2;16:14;
  17:21;19:17,23,24
**please (3)**
  13:9,11,15
**plus (2)**
  12:6,6
**pm (3)**

**IMAGE RENT A CAR, INC.**

7:13;9:12;20:19
**point (6)**
4:23;6:21;10:9,21;
13:19;15:9
**possible (4)**
11:21;12:12;13:11;
20:14
**possibly (1)**
14:7
**pre-judge (1)**
10:11
**prepared (1)**
9:15
**president (5)**
5:17,18;6:9;11:22;
19:7
**pretty (1)**
6:11
**prior (1)**
5:3
**proceeding (1)**
4:6
**proceedings (1)**
20:19
**produce (4)**
5:21;11:13;13:22;15:4
**produced (4)**
4:24;14:8;15:14;16:24
**proffered (1)**
10:22
**prompting (1)**
11:10
**proof (1)**
10:21
**provided (8)**
5:14,15;8:10,11,17;
9:13;14:4;15:6
**purely (2)**
10:23,23
**pursuant (1)**
4:14

**R**

**read (8)**
7:19;18:22,22;19:13,
14;20:9,10,10
**reading (1)**
19:11
**realize (1)**
15:15
**realized (1)**
13:8
**really (2)**
13:20;15:12
**rebut (1)**
10:20
**recall (1)**
13:3
**receipt (4)**
5:3,4,4,11
**receipts (1)**
6:5

**received (1)**
4:19
**record (6)**
7:10;14:2;15:19;
17:15;18:24;20:7
**records (4)**
4:25;14:10;15:23,23
**reflected (1)**
11:22
**reflects (1)**
17:15
**refuse (1)**
11:11
**refused (2)**
7:14;19:8
**regard (1)**
15:17
**regarding (1)**
6:6
**Relax (1)**
14:20
**relevant (1)**
6:4
**remember (1)**
4:16
**remembered (1)**
11:12
**remembers (1)**
10:15
**Rent (3)**
4:3,6;19:7
**rental (1)**
5:3
**rented (1)**
5:11
**repeatedly (1)**
13:25
**repeating (1)**
10:7
**reply (6)**
7:14;9:12,14;10:13;
12:24;15:1
**represented (1)**
18:9
**representing (1)**
4:5
**represents (2)**
8:13;9:3
**reproduced (1)**
12:9
**re-produced (1)**
12:8
**required (1)**
19:9
**residence (1)**
19:18
**respect (1)**
7:6
**responsive (1)**
15:24
**rest (1)**
4:8
**return (1)**

13:14
**returns (10)**
4:21;16:17,18,24,25;
17:4,5,6,7;18:1
**right (14)**
7:1,19,21;11:24;
12:23;14:21;16:1,6;
17:12;18:1,17,23;19:17;
20:6
**Romney (1)**
16:3
**room (1)**
19:17
**Rule (1)**
4:14

**S**

**Sal (1)**
9:3
**sales (1)**
5:3
**same (1)**
20:4
**sat (1)**
13:4
**saved (1)**
13:12
**saying (1)**
20:2
**Schedule (1)**
5:21
**scope (1)**
14:7
**second (4)**
7:14,23;9:5;18:20
**seems (1)**
19:11
**sent (3)**
12:5;13:13,24
**separate (1)**
16:18
**separately (1)**
12:10
**seven (2)**
5:10,13
**Shneior (1)**
5:17
**show (4)**
7:14,17;10:12;16:15
**showed (2)**
14:11,14
**showing (1)**
5:22
**side (1)**
9:10
**sign (1)**
12:22
**signed (3)**
4:20;5:17;16:16
**simple (5)**
10:9,12,21;19:6,7
**simply (3)**

7:24;19:8,22
**single (5)**
10:7,20,22;13:4;18:9
**Slow (1)**
4:9
**sold (1)**
5:12
**somebody (1)**
19:2
**soon (1)**
20:16
**sorry (2)**
5:6;16:10
**sort (2)**
8:20;19:19
**sought (1)**
14:3
**specific (1)**
4:25
**specifically (2)**
4:21;8:1
**spending (1)**
8:6
**spoke (1)**
10:25
**state (2)**
16:17;18:23
**stated (1)**
7:10
**statement (5)**
7:12;13:5,10;15:2;
18:10
**statements (5)**
4:25;5:2;8:11,12;
15:15
**states (3)**
6:2;7:23;8:12
**stating (3)**
12:23;17:14;19:22
**stay (1)**
19:13
**stop (1)**
12:21
**stressed (1)**
10:17
**stuff (3)**
19:15,18;20:7
**submit (1)**
15:3
**suggest (1)**
19:19
**suggesting (1)**
19:20
**sums (1)**
5:1
**supposition (1)**
10:24
**sure (3)**
13:20;15:12;17:5
**swear (2)**
13:16,16

**T**

**tax (8)**
4:21;13:5,6,14;16:17,
18;17:5,6
**telling (1)**
10:18
**tells (1)**
11:6
**ten (2)**
16:17,20
**term (1)**
16:4
**terms (1)**
6:11
**theories (1)**
10:24
**thought (2)**
12:7;14:6
**thousands (1)**
6:22
**three (3)**
12:15,18;13:3
**till (1)**
11:5
**time's (1)**
7:19
**today (2)**
12:8;16:21
**told (11)**
10:6,25;11:4,17,20;
12:14,19,20;15:3,7;18:6
**took (4)**
7:13;8:1;16:14;17:21
**tough (1)**
6:11
**transactions (1)**
5:12
**transcript (4)**
11:14;13:5,6;16:20
**transcripts (1)**
16:23
**transferred (3)**
5:25;6:23,25
**treat (1)**
19:4
**treated (1)**
19:2
**tried (1)**
11:7
**troubling (1)**
19:20
**trustee (14)**
8:21,21;10:24;11:2;
13:3;14:9;15:5,5,8,11;
17:19,20,25;18:2
**trustees (1)**
9:4
**trying (5)**
6:20;8:19;11:9;18:7;
19:6
**turn (2)**

**IMAGE RENT A CAR, INC.**

6:3;20:13

**twice (1)**
  11:16

**two (2)**
  7:18;13:2

**type (1)**
  11:9

## U

**uncomfortable (1)**
  20:14

**under (8)**
  10:6,7;12:22,22;
  13:17;14:7;20:8,15

**up (7)**
  7:14,17;12:9;14:11,
  14;19:13;20:14

**upload (2)**
  15:9,11

**use (1)**
  16:3

## V

**vehicle (2)**
  5:11,11

**version (1)**
  15:6

**vice (1)**
  6:8

## W

**walked (3)**
  12:19,20;20:12

**waste (1)**
  16:10

**water (1)**
  20:13

**way (5)**
  8:4;10:19;13:24;
  16:15;19:1

**weeks (1)**
  14:13

**What's (4)**
  6:12;8:24;15:2;18:8

**whatsoever (2)**
  5:12,16

**Where's (1)**
  8:21

**Whereupon (1)**
  20:19

**Whoa (1)**
  4:8

**Who's (1)**
  8:21

**without (3)**
  11:10;20:12,13

**word (1)**
  16:8

**work (3)**
  11:13;12:11;17:25

**written (1)**
  15:13

**wrong (1)**
  16:4

**wrote (1)**
  18:15

## Y

**year (1)**
  5:3

**years (3)**
  5:10,13;10:14

**yelling (1)**
  10:17

**Yep (1)**
  9:9

**yesterday (1)**
  15:11

## Z

**Zilberman (4)**
  5:18;10:16,18;16:16