1

1

2  UNITED STATES BANKRUPTCY COURT

3  EASTERN DISTRICT OF NEW YORK

4  Case No. 11-42390-nhl

5  - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  IMAGE RENT A CAR, INC.,

9

10                Debtor.

11

12  - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                271 Cadman Plaza East

16                Brooklyn, New York

17

18                April 10, 2012

19                11:39 AM

20

21  B E F O R E:

22  HON. NANCY H. LORD

23  U.S. BANKRUPTCY JUDGE

24

25

1

2   Matter: [55] Notice of Hearing on Debtor's Objection to the

3   Application to Employ Daniel Gershburg, Esq., P.C. as Special

4   Counsel to the Trustee (RE: related document(s) [49]

5   Application to Employ filed by Trustee Gregory Messer, [51]

6   Objection filed by Debtor Image Rent A Car, Inc., [52] Exhibit,

7   [53] Exhibit)

8

9

10

11

12

13

14

15

16

17

18

19

20   Transcribed by:   Shelia Watkins

21   eScribers, LLC

22   700 West 192nd Street, Suite #607

23   New York, NY 10040

24   (973)406-2250

25   operations@escribers.net

3

A P P E A R A N C E S :

THE LAW OFFICES OF JOSEPH Y. BALISOK

      Attorneys for Debtor

      1650 Eastern Parkway

      Suite 303

      Brooklyn, NY 11233


BY:   JOSEPH Y.  BALISOK, ESQ.


LAW OFFICE OF DANIEL GERSHBURG, ESQ., P.C.

      Attorney for Digby Adler Group

      100 Church Street

      Suite 815

      New York, NY 10007


BY:   DANIEL GERSHBURG, ESQ.


LAMONICA HERBST & MANISCALCO LLP

      Attorney for the Chapter 7 trustee, Gregory Messer

      3305 Jerusalem Avenue

      Wantagh, New York 11793


BY:  GARY F. HERBST, ESQ.

1                    P R O C E E D I N G S

2              THE CLERK:  Matter number 13 in the case of Image Rent

3    A Car, Inc.

4              THE COURT:  Good morning.  Please state your

5    appearances.

6              MR. HERBST:  Yes, Your Honor, Gary Herbst from

7    Lamonica Herbst & Maniscalco on behalf of the Chapter 7

8    trustee, Gregory Messer.

9              MR. BALISOK:  Good morning, Your Honor, Joseph --

10             THE COURT:  I need -- I want you, Mr. Herbst, step

11   away.  We can't pick you up as well unless you're at the

12   podium.

13             MR. BALISOK:  Good morning, Your Honor.  My name is

14   Joseph Balisok, and I represent the debtor, Image Rent A Car.

15             MR. GERSHBURG:  Good morning, Your Honor, Daniel

16   Gershburg.  I represent creditor Digby Adler Group, and I'm a

17   proposed special counsel to the trustee.

18             THE COURT:  Mr. Herbst, to your motion

19             MR. HERBST:  Thank you, Your Honor.  Your Honor, this

20   is the trustee's application to retain Mr. Gershburg as special

21   counsel to the trustee and the estate and to pursue whatever

22   claims that we think are appropriate to be pursued in

23   connection with this matter.  The trustee -- just as a little

24   bit of background, Mr. Gershburg represents Digby, who

25   represents 300,000 on 304,000 dollars of claims in this estate,

1  little over ninety-eight percent of the debt in the case.

2          THE COURT:  Does that arise out of the cause of action

3  in California?

4          MR. HERBST:  That's correct.

5          THE COURT:  So presumably, that's a disputed claim?

6          MR. HERBST:  Presumably.

7          THE COURT:  Okay.

8          MR. HERBST:  But they represent at this point in time

9  the largest debt of the case.  And there has not been an

10  objection filed by the trustee or certainly any other party.

11          The trustee initially met as well as I did with the

12  debtor's counsel and its principal.  And from that, I don't

13  know what has been said in the courts before, but I'll make it

14  very clear:  it was less than clear about what had transpired

15  here, who the principal of the debtor was.  There was a lot of

16  confusion with regard to that.

17          The trustee was poised to go do his own 2004

18  examinations when we had learned that the 2004 examinations

19  were being sought by Digby, and we were essentially

20  piggybacking those behind the scenes.  Since it appeared that

21  they were going to be the largest creditor, it made sense to

22  not start to incur duplicate efforts and time in this matter

23  where counsel had already been pursuing this matter pre-

24  petition and had learned a tremendous amount of corporate

25  information that the trustee and the estate did not have.  We

1  had been in contact with counsel throughout the proceedings as

2  to what they had learned, what they've -- and what information

3  they had, and it came to the point where it appears that these

4  claims may be ripe for prosecution or pursuit at this point in

5  time.  And thus, the trustee --

6            THE COURT:  What claims?

7            MR. HERBST:  Claims of potential fraudulent

8  conveyances and diversion of assets of the estate, those type

9  of claims.

10           THE COURT:  Claims having nothing to do with

11  California's action --

12           MR. HERBST:  Nothing to do --

13           THE COURT:  -- which was an action --

14           MR. HERBST:  -- with California action.

15           THE COURT:  -- between a creditor and the debtor which

16  was stayed.

17           MR. HERBST:  That's correct.  And those are the types

18  of things that they were uncovering, types of information that

19  they were uncovering throughout their investigation and

20  continuing on through the bankruptcy process as to what

21  happened to the estate's assets.

22           The trustee at no time opined or said that it was

23  satisfied and that it had no further interest in pursuing this

24  types of claims in this case.  I understand it may have been

25  represented to your predecessor that that was the case, but

1  that's not what the trustee's position was.  Now, the trustee

2  is faced with the idea of my firm doing this as general

3  counsel, or retaining the firm that has the most corporate

4  knowledge and avoiding a lot of duplication of effort; and

5  also, quite candidly, at a reduced rate from what I would be

6  charging; almost half -- about half of what the rate would be

7  that my firm would charge in connection with this case.  The

8  primary beneficiary of any recovery if there were recovery

9  would be Digby.  So it seemed to make a lot of logical sense

10  from a cost standpoint, from a avoiding of duplication effort,

11  and also from the interest of the parties that are aligned at

12  this point in time, the estate and Digby in recovery.

13          Now, the trustee received an objection filed

14  curiously, I guess, by the debtor.  Now, I guess objections

15  could be filed by the debtor, but it would seem more pointed if

16  it was filed by principals of the debtor or parties that might

17  be the target of the pursuit of claims.  But the debtor's

18  interests are effectively represented by the trustee.  It's not

19  an individual type case; it's a corporate case.  So the

20  corporate entity is effectively represented by the trustee.

21  I'm not saying they don't have standing to file it, but it's

22  the question of really whether the debtor should be --

23          THE COURT:  It's a question of what exists after a

24  Chapter 7 in a corporation.  It's usually it's a dead entity

25  because in a --

1       MR. HERBST:  correct.

2           THE COURT:    -- corporate 7 there's really nothing

3   for -- to be done.  I mean there were some judges who wouldn't

4   even hear a Chapter 7 debtor corporate attorney who I over the

5   years appeared before.  I took that position that it really is

6   an entity that doesn't exist for purposes of taking those kinds

7   of positions, but --

8           MR. HERBST:  And if anything, more often than not,

9   when I am faced with these kinds of situations, I usually have

10  an aligned interest with the debtor's counsel, saying, you

11  know, if you recover assets, marvelous; if you don't, you

12  don't.  But they usually don't have an opposition to the

13  trustee seeking to recover.

14          THE COURT:  But also, Mr. Herbst, generally speaking,

15  though, a special counsel retention once the trustee has

16  general counsel is usually for a very specific kind of thing as

17  opposed to in this case you're really looking for the special

18  counsel to do the job that the general counsel would do with

19  respect to examining as far as avoidance actions.

20          MR. HERBST:  Yes and no.  You're right, Your Honor, in

21  the context of the case where you have a lot of assets and a

22  lot of issues and you have one focus, which is a limited focus

23  of only one cause of action that might be pursued.  Here there

24  really is very limited issues other than, essentially, the

25  action that would be pursued that the creditor here had already

1  been investigating and is -- would be representing the estate's

2  interest.  But it's primarily, as they say, a recognition that

3  Digby as the ninety-eight-point-whatever-percent creditor here

4  would have not only the aligned interest but is their -- as

5  Judge Leifman used to say to me, it's their ox that's being

6  gored.  So they are the primary parties that will reap the

7  benefits or lack thereof if counsel, special counsel was

8  retained.

9       THE COURT:  Do you know whether Mr. -- do you know

10  whether Digby has released Mr. Gershburg as his counsel?

11       MR. HERBST:  I have advised Mr. Gershburg that if they

12  are retained by the estate, the master in this case is the

13  trustee.  The trustee will dictate all terms.  Now, I don't

14  know if they have retained separate counsel because I don't

15  know that separate counsel -- Digby needs separate counsel

16  beyond this point except to the extent that a claims objection

17  might be pursued.  But absent --

18       THE COURT:  My question was not that; my question was

19  whether they released them or not.  I under -- you know,

20  because to understand that somebody has one master, if they

21  still got two clients, that could be problematic from an

22  ethical point of view.

23       MR. HERBST:  I -- Your Honor, I don't know if that had

24  been clearly spelled out by Mr. Gershburg, but I have more

25  than -- I have no problem Mr. Gershburg addressing that issue

1  and making sure it would be clear that the party, the sole

2  party would be the trustee.  And I don't think that Mr.

3  Gershburg or his client would have any opposition to that, but

4  I will leave that to him to represent that to the Court.

5           There were also some allegations in reading the

6  opposition that there had been some discourteous behavior.  I

7  will assume the Court that to the extent necessary that I need

8  to appear at any deposition as well, I will be glad to do that,

9  but there will not be any conduct that would be anything but

10  proper before the Court and proper in a deposition.  I had been

11  assured by Mr. Gershburg that that did not happen.

12           I know there's a dispute between the parties.  But

13  just to make it clear:  there will be no -- nothing other than

14  a proper way to proceed before this Court and in any

15  deposition.  So to the extent that that was unclear or that

16  there's any ambiguity, I'll nip that in the bud for the Court.

17           There really is no, in our position, basis to

18  challenge the retention of special counsel.  It's the trustee

19  in his business judgment believing it's proper; it is allowable

20  under the code.  The conflict of interest that might be an

21  issue I don't believe exists for the purposes of retention

22  under 327, and I think the case law is quite clear.  The only

23  basis that's being asserted is the fact that they were a

24  creditor of the estate for Mr. Gershburg.  But Your Honor's

25  question, I think, is a fair one, which is, are they going to

1  release them so that issue is essentially avoided -- I think

2  would avoid that issue.  Unless Your Honor has any other

3  questions for me, I'll be glad to address them or to Mr.

4  Gershburg?

5          THE COURT:  Let me hear -- well, let me -- again,

6  understanding that I'm not quite sure what role a Chapter 7

7  debtor's lawyer, corporate debtor's lawyer has here, I'm going

8  to hear Mr. Balisok.  I don't know how much weight I'm going to

9  give to the argument based upon that, but I'm going to hear

10 you.  So let me hear Mr. Balisok, and then I'll get back --

11          MR. HERBST:  Thank you, Your Honor.

12          THE COURT:  -- to you if I have any other questions.

13          MR. BALISOK:  Thank you, Your Honor.  There's two

14 reasons why the -- mainly, why the debtor is objecting to the

15 appointment of Mr. Gershburg as attorney for the trustee.  The

16 first one is the current conflict of interest.  Mr. Herbst has

17 represented to this Court that there hasn't been any objection

18 to the alleged debt of Mr. -- of Digby Adler Group, LLC, and

19 that couldn't be more incorrect, Your Honor.  At the 2004

20 meeting, Mr. Zilberman, representative of the debtor, expressly

21 stated this was a case of corporate terrorism and that he

22 believed that there was a frivolous claim brought against him.

23          THE COURT:  I think what Mr. Herbst said is that

24 there's been no objection filed by the trustee -- it's the

25 trustee -- this is -- a Chapter 7 is the trustee drives the

1  truck.  So --

2        MR. HERBST:  That's right, Your Honor.

3        THE COURT:  -- claims are filed, and it's for the

4  trustee to object to them or not.  And I think since the

5  trustee is the only one who can object to claims when he was

6  saying there was no objection, I think he meant that the

7  trustee has not objected to claims.

8        MR. HERBST:  So --

9        THE COURT:  Is that correct?

10       MR. HERBST:  That's correct, Your Honor.  But also,

11 just to also make it clear, the debtor technically could

12 file -- the debtor or some other party could file a claims

13 objection although the trustee is primarily given that role.

14 No -- all I was saying is no party has filed any claim any --

15       THE COURT:  Okay.

16       MR. HERBST:  -- objection to claim of record, and

17 therefore the claim is allowed as filed.

18       THE COURT:  Right.

19       MR. BALISOK:  We have filed an objection to claim of

20 record.  We did it when we filed the motion to quash the 2004

21 motion made by Mr. Gershburg.  We represented to the Court that

22 it was a frivolous claim, Your Honor.  This 300,000 dollars is

23 a disputed matter.  In fact, Your Honor, we believe --

24       THE COURT:  Yeah, I understand that it's disputed.

25       MR. BALISOK:  So --

1      THE COURT:  But you were litigating in California.

2      MR. BALISOK:  Right.

3      THE COURT:  I understand that.

4      MR. BALISOK:  Which bring --

5      THE COURT:  But I think when we're talking about a

6  claims objection, we're talking about a formal claims objection

7  to a particular claim filed.  And I think that -- I understand

8  that in various papers, you have made it -- you have made it

9  known on behalf of your client that you don't agree that this

10  amount is owed.  I understand.

11      MR. BALISOK:  Also, it's extremely critical, Your

12  Honor, for the next point, and that is there's an asset

13  currently of the estate that the trustee has an obligation to

14  pursue, Your Honor; and that is that Digby Adler Group, LLC

15  pursued a frivolous claim.  And I've spoken to tort attorneys,

16  and they've told me that the possible damages in a claim when

17  you prove that there has been a frivolous claim and perhaps

18  malicious prosecution -- I'm not a tort attorney, Your Honor,

19  but there are many claims under with which you can pursue, the

20  trustee has the ability to pursue against Digby Adler Group.

21  And this could actually result in a huge amount of assets being

22  obtained by the estate.

23      And Your Honor, the only reason, as I mentioned and

24  Mr. Herbst so kindly noted in my motion to oppose Digby Adler's

25  2004 motion, Your Honor, this asset of the estate belongs to

1    the shareholders, Your Honor.  This asset of the estate would

2    be left over after you prove that Digby Adler Group's claim was

3    clearly frivolous.  It would knock out the 300,000 dollar claim

4    they made.  The funds to those people who have claims on what's

5    called the debt would be paid, and the remaining funds,

6    obviously, the trustee would get a percentage for

7    administering.  But Your Honor, it would go to the

8    shareholders.  So we have a learn, clear case where Digby Adler

9    Group is directly, you know --

10           THE COURT:  Well, except if you feel that that is an

11   asset of the estate --

12           MR. BALISOK:  And we have stated as such.

13           THE COURT:  -- now again, we're not talking about

14   actions that are in the bankruptcy, okay.  In other words,

15   if --

16           MR. BALISOK:  This is an asset to the estate, Your

17   Honor.  Digby Adler Group sued and caused -- in a tortious

18   action cause Image Rent A Car to actually --

19           THE COURT:  Trustee's.

20           MR. BALISOK:  -- go bankrupt.  Your Honor, this,

21   according to all tort attorneys I've spoken to, could result in

22   a significant claim, and this is a distinct, actionable cause

23   of action owned currently by the trustee, Your Honor.  And

24   Digby Adler Group, who clearly has an adverse interest to the

25   trustee, for the trustee has an obligation to pursue all causes

1  of action, including those actions --

2           THE COURT:  Here's the thing:  Mr. Messer is the

3  trustee, and Mr. Herbst's firm has been retained to represent

4  the trustee.

5           MR. BALISOK:  Yes, Your Honor.

6           THE COURT:  The trustee is now through Mr. Herbst's

7  firm seeking to retain special counsel.  If you have -- if you

8  you believe that you have an asset that should be investigated

9  by Mr. Messer --

10          MR. BALISOK:  Yes, Your Honor

11          THE COURT:  -- okay, you -- I think that that prevents

12  you from contacting Mr. Messer --

13          MR. BALISOK:  We did, Your Honor.

14          THE COURT:  -- or giving him that material.

15          MR. BALISOK:  We did, Your Honor

16          THE COURT:  And presumably, if he feels that this is

17  worth pursuing, he has the ability to use Mr. Herbst's firm.

18          MR. BALISOK:  But this is all premature, these

19  requests, Your Honor.

20          THE COURT:  Well, he has the ability to use Mr.

21  Herbst's firm.  It's a different asset.  If --

22          MR. BALISOK:  But he hasn't even looked into it, Your

23  Honor.

24          THE COURT:  Well, that's a different issue.

25          MR. BALISOK:  Right, so the question now --

1            THE COURT:  Okay.  If you -- that's a different issue.

2  Again, if you have an asset to present to Mr. Messer, you

3  should present it to Mr. Messer.  And again, if Mr. Messer

4  wants to pursue it in that case, I believe, he would not be

5  able to use Mr. Gershburg; he would be able to use Mr. Herbst's

6  firm in determining whether or not litigation should be

7  brought.  But that's -- that is a --

8            MR. BALISOK:  We've --

9            THE COURT:  -- different asset.  That's -- you're

10  talking about what's frivolous here is the -- was the

11  litigation in California, okay.  I don't think you're at this

12  point suggesting that litigation that the trustee has yet to

13  bring is frivolous because, obviously, the trustee has an

14  attorney and Mr. Herbst's firm.  Rule 11 exists in this Court.

15            MR. BALISOK:  Right, Your Honor.

16            THE COURT:  And presumably, if frivolous actions are

17  brought, you can pursue or you can attempt to pursue the issue

18  with respect to whether something is within rule 11 or not.

19  But that's a different action.

20            MR. BALISOK:  And I agree.

21            THE COURT:  What Mr. Messer is trying to do is to make

22  sure that he fulfills his duty as a trustee, and he has a duty

23  to examine.  And then if he finds anything for which he feels

24  is a basis for bringing an avoidance action, he has a duty to

25  bring that action.  Okay, it's in the best interest of the

1  estate to do that at the smallest cost, and the argument that

2  he's making here is that Mr. Gershburg, you know, has -- had

3  gone up that learning curve already because --

4          MR. BALISOK:  Right.  And Your Honor --

5          THE COURT:  -- he has a lot of information, okay.

6  What I need to have made clear here today is who is the client,

7  and who is the attorney, and how many masters that attorney

8  has; and how the client is going to be getting reports from the

9  attorney, and how that's going to work so that it's very clear

10  that what happened in California happened in California.  And

11  if you feel there's a cause of action, you'll be in touch with

12  Mr. Messer, and Mr. Messer presumably will use his firm if he

13  feels necessary to pursue that, to use Mr. Herbst's from who

14  has been retained already.

15          But here we're talking about the right of a trustee to

16  utilize a counsel who has sufficient information on the face of

17  it again there's not an objection by another creditor.  And in

18  fact, there is an exception if we're talking about the

19  representation was of a creditor so that's, I guess, what I'm

20  trying to make clear here.  I understand your concerns, but I

21  think we have to be clear on what the retention being sought

22  is.  And that does not in any way take away from if you feel

23  that there's an asset here that you contact Mr. Messer and you

24  discuss it with him.

25          MR. BALISOK:  We have, Your Honor, repeatedly, and I

1  sent him a copy of all motions I made.  And that's why I was a

2  little surprised by this application because it seems a little

3  premature.  He hasn't investigated the matter.

4          THE COURT:  It's not premature.  If it could -- he

5  could have --

6          MR. BALISOK:  He hasn't done anything yet, Your Honor.

7          THE COURT:  He could have an avoidance action to be

8  brought against the debtor here.  That has nothing to do with

9  whether the action in California is frivolous or not.  It's

10 going to be totally independent of that action.  If there

11 was -- if he has a reason, whether it's preference, or

12 fraudulent conveyance, or unexplained assets, or missing

13 assets, that's an -- those are his avoidance power actions.

14         MR. BALISOK:  But he'll be hiring Digby Adler Group to

15 whom he has a cause of action against.

16         THE COURT:  Oh, no, he's not hiring Digby; he's hiring

17 Mr. Gershburg's firm.

18         MR. BALISOK:  Who works for Digby, Your Honor.

19         THE COURT:  Well, that's what we're going to find

20 out --

21         MR. BALISOK:  Yes, Your Honor, okay.

22         THE COURT:  -- right now.

23         MR. BALISOK:  Passover was Saturday and Sunday, so I'm

24 kind of a little behind the curve.  I -- today is Passover,

25 too, but I got exception to come and work.  But -- so I'm going

1  to try to do this.  I would have done it in writing but because

2  of the holiday, I do apologize.

3         THE COURT:  You didn't do it.  You did file a writing.

4         MR. BALISOK:  There were some things alleged by the

5  reply, and I just want to quickly, Your Honor.  So --

6         THE COURT:  Go ahead.

7         MR. BALISOK:  Okay.  So, in the application, the

8  estate's claims, I've addressed that.  If I could just quickly

9  with leave of Court, Your Honor, Mr. Herbst has represented

10  that I allege that the sole reason why Mr. Gershburg's

11  retention should be denied should be solely due to his

12  representation of the creditor.  And that is incorrect, Your

13  Honor.  I stated in paragraph 39 explicitly that the reason why

14  in addition to that fact is that Mr. Gershburg abused,

15  harassed, intimidated.  It didn't border, which what was Judge

16  Rosenthal said:  he really intimidated and attacked Mr.

17  Zilberman.  It was a bloodbath in there, Your Honor.  He

18  treated him like, frankly, the way you don't treat your enemy

19  if you're thinking straight.  Mr. Gershburg acted in a behavior

20  that on paper was clearly egregious.  I was there, Your Honor,

21  and let me tell you every word that came out of Mr.

22  Gershburg's -- Mr. Zilberman's mouth was -- and he was made fun

23  of.  It didn't end, Your Honor.  It was horrible.

24         And then I went to the bathroom:  Mr. Zilberman says

25  I'm not feeling well; I'm going to throw up; I got high blood

1  pressure; I'm not sure what I'm going to do.  I told him we got

2  to stay here.  He calls me today:  he says I'm still sick from

3  it.

4          The reason why I'm trying to stop Mr. Gershburg which

5  ironic is that Mr. Herbst is saying that Mr. Gershburg does not

6  represent -- doesn't represent Digby Adler Group.  Well, Your

7  Honor, a lot of misinformation and you've been mislead in a

8  large part here, and I'd like -- just like to clearly point it

9  out.  Mr. Gershburg has not done any litigation on the

10  California matter.  He's not admitted in California.  He didn't

11  litigate the matter in California.  He was retained after the

12  California matter was stayed by this bankruptcy court.

13          Mr. Gershburg perhaps has spent some time reading.

14  The only thing he has done is the 2004 in which he attacked,

15  disrespected, abused, and treated Mr. Zilberman in a truly

16  unprofessional manner.  Then after the Court told him you get

17  one examination, four and a half hours of abuse wasn't enough:

18  he wanted to come back and do it again.  He gets in front of

19  Judge Rosenthal, and Judge Rosenthal says to him, listen, did

20  you or did you not do what Mr. Balisok said?

21          He says, no, I didn't.  He lies, straight out lies to

22  the Court.

23          THE COURT:  I've made my -- I'm familiar with what --

24          MR. BALISOK:  But then he calls me a liar, Your Honor.

25  And then on top of it, he lies again.  And then I get -- Your

1    Honor, Mr. Gershburg's kind of is consistent -- the question,

2    Your Honor, is should the trustee, who already has a perfectly

3    good attorney, who I would be more than happy to work with -- I

4    did not object -- should he then be allowed to have special

5    counsel who's already proven that he doesn't care to lie to the

6    Court, doesn't care to abuse the debtor, doesn't care --

7                THE COURT:  I've heard enough.  Okay, anything else?

8                MR. BALISOK:  Yes, just a few more things, Your Honor.

9    The record, Your Honor -- the record is quite clear.  If you

10   review the record, all of the information is contained therein.

11   Judge Rosenthal was very clear:  he said that Mr. Gershburg

12   treated Mr. Zilberman exactly as I describe.

13               The question here is not a merely technical one; it's

14   a question of equity, Your Honor.  Out of all the attorneys in

15   Brooklyn in mid and eastern district, whether or not Mr. --

16               THE COURT:  Here's the problem:  you have to figure

17   out who your client is.  You are representing the debtor; you

18   are not representing the principal, is that correct?  Or are

19   you also being retained by the principal --

20               MR. BALISOK:  I'm trying to --

21               THE COURT:  -- to make this argument today?

22               MR. BALISOK:  -- defend Mr. Zilberman from going

23   though the terrible experience that he went through last time,

24   Your Honor.

25               THE COURT:  Who are you representing?  Are you --

1    MR. BALISOK:  I represent Image Rent A Car, the

2 debtor.  Mr. Zilberman is a representative of the debtor.

3        THE COURT:  But you're not representing --

4        MR. BALISOK:  And he's the only represent --

5        THE COURT:  -- him?

6        MR. BALISOK:  No.  And he's the only representative

7 available, Your Honor.  So what am I going to do?  I called him

8 up and I told him that the application was made.  And he said

9 to me, is this legal; can he do this to me again?  I don't know

10 how I'm going to get him back in the room.

11        THE COURT:  Again, he's not -- we have to -- again --

12        MR. BALISOK:  Mr. Gershburg cannot do his job without

13 sitting down with Mr. Zilberman again at least for four hours.

14 He spent those four hours abusing him.

15        THE COURT:  You understand that the client now is the

16 trustee?

17        MR. BALISOK:  But the trustee, Your Honor, has good,

18 perfectly good counsel.  He could pick from anyone he wants.  I

19 called him, Your Honor.  I said to him, "I can't get through to

20 Mr. Herbst.  I don't understand what's going on.  Why are you

21 picking Mr. Gershburg?  Did you not read the order.  Did you

22 not read the transcript?  Has anyone read anything?  Has anyone

23 seen what's going on?"

24        And he said to me I'll hire other -- what's it's

25 called -- counsel.

1    THE COURT:  Let me hear from --

2    MR. BALISOK:  Well, hire other counsel.

3    THE COURT:  Let me hear from Mr. Gershburg, okay.

4    MR. BALISOK:  Thank you, Your Honor.

5    THE COURT:  Good morning, Mr. Gershburg.

6    MR. GERSHBURG:  Good morning, Your Honor.  Let me just

7  be perfectly clear if I may.  And just to echo most of what Mr.

8  Herbst said, in terms of the representation, should we be

9  appointed as special counsel, we will no longer be appointed as

10  counsel to Digby Adler.  In other words, we will not be

11  retained by Digby Adler anymore.

12    THE COURT:  But -- I understand that.  But you are

13  currently their attorney?

14    MR. GERSHBURG:  That's correct.

15    THE COURT:  Okay.  Are they -- again, it's not a

16  question of what you want to do.  Are they prepared to release

17  you?

18    MR. GERSHBURG:  They are.  And it's conversations that

19  I've had with my client with respect to this.  If we are, in

20  fact, appointed special counsel, if the Court believes it's a

21  conflict to do so, they're absolutely --

22    THE COURT:  Oh, no, there's no question --

23    MR. GERSHBURG:  Right.

24    THE COURT:  -- that you need to be representing -- and

25  I believe probably that would be Mr. Herbst's position, too,

1  that you --

2          MR. GERSHBURG:  Yes, Your Honor.

3          THE COURT:  -- you're going --

4          MR. GERSHBURG:  Yes, yes, Your Honor.

5          THE COURT:  They need to be -- you need to -- yes.

6          MR. GERSHBURG:  Yes, Your Honor.

7          THE COURT:  Your client.  And if that's not clear, it

8  needs to be made clear that Digby -- and again, I don't know

9  what the continued involvement would be in any event -- but

10 that you could no longer be Digby's attorney.  And again,

11 that's up to Digby as well.

12         MR. GERSHBURG:  We've had conversations.  I've had a

13 conversation with my client.  They understand this and they're

14 fine with this:  if I am, in fact, appointed special counsel,

15 we would no longer represent Digby.

16         THE COURT:  That would be your former client --

17         MR. GERSHBURG:  correct.

18         THE COURT:  -- what -- if you're appointed?

19         MR. GERSHBURG:  That is correct.  That is correct.

20 Other than that, I don't want to get into a war of words.  I

21 will simply say on the record --

22         THE COURT:  How much -- again, and maybe I was -- I

23 misunderstood.  How much information do you have, and how have

24 you gotten it -- don't tell me what it is -- and gathered it

25 such that you have this amount of knowledge, which is going to

1  save the estate so much money other than the fact that you

2  apparently work more cheaply than --

3          MR. GERSHBURG:  Correct.

4          THE COURT:  -- Mr. Herbst does.

5          MR. GERSHBURG:  For a period of time.  I will say that

6  because of the California litigation, which I've never

7  represented I've been involved, in which I'm not involved in --

8          THE COURT:  My misunderstanding.

9          MR. GERSHBURG:  Right.  We have received documentation

10  from the California attorneys as well as, without going into

11  specifics, we've been contacted by several people that are

12  intimately involved with this matter with respect to the

13  debtors, who provided us certain pieces of information about

14  the way the debtor has conducted their business, about certain

15  transfers that occurred prior, about certain personal

16  relationships that occurred.  There were affidavits that were

17  filed with the California court that completely contradict, and

18  this was brought up in the 2004 examination as well as the 341

19  examination, what the debtors now represent, the debtor

20  corporation.  So they are several people that have reached out

21  to us with respect to that as well as documentation that we've

22  received from counsel, from Digby's counsel in California with

23  respect to this.  We've also done our own research, we've --

24  I'm a little handcuffed here in that I can't go into details --

25  but to see whether or not the corporation is still actively

1   doing business on our own through our own expenses, which the

2   trustee did not do at the present time.  We took it upon

3   ourselves because we felt so strongly in our position that

4   there was, in fact, fraudulent conveyances here; that there

5   was, in fact, business that is ongoing.  So  without again

6   going into specifics, we have several pieces of information

7   from various sources and from going through the bank records

8   and from going through the documentation that was provided,

9   we've sort of taken a snapshot and done a really detailed

10  snapshot, I should, as to how the debtor conducted their

11  business over the previous five years -- or four years, I

12  should say.

13          THE COURT:  How long have you been involved in the

14  matter?

15          MR. GERSHBURG:  A little over, I would say, probably,

16  six months to a year, Your Honor, from the beginning of it, I

17  would say around that period of time.  But within that, my

18  client --

19          MR. GERSHBURG:  And have you been paid throughout?

20          MR. GERSHBURG:  I have, Your Honor.

21          THE COURT:  Okay.  Do you understand that you're not

22  going to be paid anymore?

23          MR. GERSHBURG:  I do, Your Honor.  I do.

24          THE COURT:  And that whatever -- again, whatever

25  application for allowance is dependent upon there being an

1   estate here, and that that application is a very, very detailed

2   application for allowance that you'd have to make here and that

3   I would have to approve?

4           MR. GERSHBURG:  I feel very strongly in my position

5   that certain occurrences took place in this action dealing with

6   avoidance and dealing with fraudulent conveyances that I'm

7   absolutely prepared to take that chance, if you will, Your

8   Honor, yes.

9           THE COURT:  Okay.  And that you're -- and that the

10  Digby entity can no longer be paying you?

11          MR. GERSHBURG:  That's correct.

12          THE COURT:  They -- you will no longer have a

13  attorney-client relationship with them, is that made clear to

14  them?

15          MR. GERSHBURG:  Yes, Your Honor.

16          THE COURT:  Okay.  Mr. Herbst, has there been any

17  discussion with how you're going to be monitoring this

18  retention?  I'm going to ask you, Mr. Herbst, to come back to

19  the podium.

20          MR. HERBST:  Yes, Your Honor, we haven't had a

21  detailed discussion on this, but I will be -- I and one of my

22  associates, Jordan Pilevsky, will be --

23          THE COURT:  Well, actually, it should be the trustee.

24  I mean I guess that's -- let's be clear about this because

25  otherwise to the extent that we have a client here, the client

1    is the trustee, and I don't -- what we don't want to do is have

2    two levels of legal work.

3              MR. HERBST:  That's quite fair, Your Honor.  And I

4    certainly -- to make it clear, Your Honor won't see if there is

5    an estate duplicative billing records.  Your Honor will not see

6    that.  The only thing Your Honor will see is one firm billing

7    for one cause.  That's what you'll see.  So I'll make clear to

8    the extent that I have any communications just as I believe

9    it's necessary in the context of my representation, you won't

10   see a duplicate billing of my firm and what special counsel is

11   doing.

12             But I -- what I would -- what I anticipate is there

13   will be regular conversations, regular status reports by

14   special counsel in contacting the trustee with regard to his

15   recommendations and whether the trustee will make a

16   determination in his business judgment as to what actions

17   should be brought -- so -- and not by me; I'm talking about by

18   special counsel we'll have those communications and provide

19   regular status reports.

20             As far location of the two -- any depositions, to

21   avoid the argument that I heard today, it would seem to be that

22   the trustee has a conference room, and those can be conducted

23   in the trustee's conference room as far any examinations that

24   take place.  So that would avoid, I'm sure, any question or

25   concern that has been raised today with regard to the

1  professionalism, or the disrespect, or things of that nature.

2  I hope that addresses Your Honor's question.

3          THE COURT:  In part, it does.  I would want to see

4  that -- Mr. Gershburg, is it individual or are you with a firm?

5          MR. GERSHBURG:  It's my own firm, Your Honor.

6          THE COURT:  Law offices of Daniel Gershburg?

7          MR. GERSHBURG:  Law -- Daniel Gershburg, Esq., P.C.,

8  yes.

9          THE COURT:  I would want there to be written monthly

10 reports to the trustee.  I mean what I'm trying to do here, Mr.

11 Balisok, is to alleviate the concerns and the issues that you

12 have.  I know you feel very strongly about them and so does

13 your client, but what I'm trying to do is to allow the

14 retention.  Again, and I'm not going to sign an order until I

15 see a letter from your client releasing you and making clear

16 that there is no longer an attorney-client relationship, and

17 there will be no compensation from them to you; as well as an

18 affidavit from you.  I'm not going to do -- I'm not going to

19 sign an order until I see both the statement from the attorney

20 and your affidavit as to that effect.

21          I want to see monthly written reports to the trustee.

22 I take Mr. Herbst's suggestion:  I think it's a good one, that

23 the -- any further examinations occur in the trustee's offices.

24 And if the trustee can make himself available, even better.

25 I'm not going to require that.  I can't tell him how to operate

1  as a trustee.

2          Let me just double check as long as I see you're here;

3  Ms. Martin, does the U.S. Trustee's Office taken any position

4  on this?

5          MS. MARTIN:  Your Honor -- I'm sorry.  Marylou Martin

6  representing the United States Trustee, Your Honor, I believe I

7  did sign off on this particular retention order.  Yeah, I --

8          THE COURT:  Okay.

9          MS. MARTIN:  We didn't feel that there was any issues

10  with regard to a 327(e) retention this case.  We didn't believe

11  that Mr. Gershburg represented an adverse interest to the

12  estate.

13          THE COURT:  Okay.  And that's important, Mr. Balisok,

14  because that's what -- that's their job, too.  So I'm -- again,

15  I'm going to allow the retention, pending my receiving, again,

16  a letter making it absolutely clear from your client that there

17  is been released or is not an attorney-client relationship that

18  will be continued and there's no compensation that you're going

19  to be paid from him or any other source other than this estate;

20  and upon receiving those documents as well as being made clear

21  in the proposed order that they're going to be monthly reports

22  to the trustee.

23          And again, the Court is here if, in fact, we're

24  needed.  Hopefully, it will go smoothly, and we will not be

25  needed.  But the kinds of things that you are being retained to

1  do are to do -- to examine with respect to the trustee's

2  avoidance powers, okay, and rule 11 applies.  And again, the

3  trustee -- and it seems to me you shouldn't be chasing your

4  tail if after an examination you determine there's nothing to

5  pursue.  And if you determine there is something to pursue,

6  then you should pursue it.

7          MR. GERSHBURG:  Yes.

8          THE COURT:  That's my ruling.

9          MR. GERSHBURG:  Thank you, Your Honor.

10         MR. HERBST:  Thank you, Your Honor.

11         THE COURT:  Thank you.

12         MR. BALISOK:  Thank you, Your Honor.

13         THE COURT:  So it's granted subject to my receiving

14  those documents.

15         MR. HERBST:  I'll submit an amended order, Your Honor,

16  if that --

17         THE COURT:  Which, again, I will hold up on until I

18  receive the documents from --

19         MR. HERBST:  Yes, Your Honor.

20         THE COURT:  Thank you.

21         THE CLERK:  Just wanted tell you the order that I

22  checked did not have a UST signature.  So if he's going to

23  submit an amended order, you should make sure it has --

24         THE COURT:  Ms. Martin, we did not see a UST

25  signature on the proposed order.

1          Can you run that proposed -- give the new proposed

2   order to Ms. Martin, so she can sign off, please?

3          MR. HERBST:  Certainly, Your Honor.

4          THE COURT:  It may -- again, it may have just been the

5   copy we have.  Thank you.

6       (Whereupon these proceedings were concluded at 12:13 PM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

C E R T I F I C A T I O N

I, Shelia Watkins, certify that the foregoing transcript is a true and accurate record of the proceedings.

_____

SHELIA WATKINS

AAERT Certified Electronic Transcriber CET**D 645

eScribers

700 West 192nd Street, Suite #607

New York, NY 10040

Date:  April 17, 2012

In the Matter of:
IMAGE RENT A CAR, INC.

Case No. 11-42390-nhl
April 10, 2012

## A

**ability (3)**
13:20;15:17,20
**able (2)**
16:5,5
**absent (1)**
9:17
**absolutely (3)**
23:21;27:7;30:16
**abuse (2)**
20:17;21:6
**abused (2)**
19:14;20:15
**abusing (1)**
22:14
**according (1)**
14:21
**acted (1)**
19:19
**action (18)**
5:2;6:11,13,14;
8:23,25;14:18,23;
15:1;16:19,24,25;
17:11;18:7,9,10,15;
27:5
**actionable (1)**
14:22
**actions (6)**
8:19;14:14;15:1;
16:16;18:13;28:16
**actively (1)**
25:25
**actually (3)**
13:21;14:18;27:23
**addition (1)**
19:14
**address (1)**
11:3
**addressed (1)**
19:8
**addresses (1)**
29:2
**addressing (1)**
9:25
**Adler (12)**
4:16;11:18;13:14,
20;14:2,8,17,24;
18:14;20:6;23:10,11
**Adler's (1)**
13:24
**administering (1)**
14:7
**admitted (1)**
20:10
**adverse (2)**
14:24;30:11
**advised (1)**
9:11
**affidavit (2)**
29:18,20
**affidavits (1)**

**25:16**
**again (24)**
11:5;14:13;16:2,3;
17:17;20:18,25;22:9,
11,11,13;23:15;24:8,
10,22;26:5,24;29:14;
30:14,15,23;31:2,17;
32:4
**against (4)**
11:22;13:20;18:8,
15
**agree (2)**
13:9;16:20
**ahead (1)**
19:6
**aligned (3)**
7:11;8:10;9:4
**allegations (1)**
10:5
**allege (1)**
19:10
**alleged (2)**
11:18;19:4
**alleviate (1)**
29:11
**allow (2)**
29:13;30:15
**allowable (1)**
10:19
**allowance (2)**
26:25;27:2
**allowed (2)**
12:17;21:4
**almost (1)**
7:6
**although (1)**
12:13
**ambiguity (1)**
10:16
**amended (2)**
31:15,23
**amount (4)**
5:24;13:10,21;
24:25
**anticipate (1)**
28:12
**anymore (2)**
23:11;26:22
**apologize (1)**
19:2
**apparently (1)**
25:2
**appear (1)**
10:8
**appearances (1)**
4:5
**appeared (2)**
5:20;8:5
**appears (1)**
6:3
**application (7)**
4:20;18:2;19:7;
22:8;26:25;27:1,2

**applies (1)**
31:2
**appointed (5)**
23:9,9,20;24:14,18
**appointment (1)**
11:15
**appropriate (1)**
4:22
**approve (1)**
27:3
**argument (4)**
11:9;17:1;21:21;
28:21
**arise (1)**
5:2
**around (1)**
26:17
**asserted (1)**
10:23
**asset (10)**
13:12,25;14:1,11,
16;15:8,21;16:2,9;
17:23
**assets (7)**
6:8,21;8:11,21;
13:21;18:12,13
**associates (1)**
27:22
**assume (1)**
10:7
**assured (1)**
10:11
**attacked (2)**
19:16;20:14
**attempt (1)**
16:17
**attorney (11)**
8:4;11:15;13:18;
16:14;17:7,7,9;21:3;
23:13;24:10;29:19
**attorney-client (3)**
27:13;29:16;30:17
**attorneys (4)**
13:15;14:21;21:14;
25:10
**available (2)**
22:7;29:24
**avoid (3)**
11:2;28:21,24
**avoidance (6)**
8:19;16:24;18:7,
13;27:6;31:2
**avoided (1)**
11:1
**avoiding (2)**
7:4,10
**away (2)**
4:11;17:22

## B

**back (4)**
11:10;20:18;22:10;

**27:18**
**background (1)**
4:24
**BALISOK (48)**
4:9,13,14;11:8,10,
13;12:19,25;13:2,4,
11;14:12,16,20;15:5,
10,13,15,18,22,25;
16:8,15,20;17:4,25;
18:6,14,18,21,23;
19:4,7;20:20,24;21:8,
20,22;22:1,4,6,12,17;
23:2,4;29:11;30:13;
31:12
**bank (1)**
26:7
**bankrupt (1)**
14:20
**bankruptcy (3)**
6:20;14:14;20:12
**based (1)**
11:9
**basis (3)**
10:17,23;16:24
**bathroom (1)**
19:24
**beginning (1)**
26:16
**behalf (2)**
4:7;13:9
**behavior (2)**
10:6;19:19
**behind (2)**
5:20;18:24
**believes (1)**
23:20
**believing (1)**
10:19
**belongs (1)**
13:25
**beneficiary (1)**
7:8
**benefits (1)**
9:7
**best (1)**
16:25
**better (1)**
29:24
**beyond (1)**
9:16
**billing (3)**
28:5,6,10
**bit (1)**
4:24
**blood (1)**
19:25
**bloodbath (1)**
19:17
**border (1)**
19:15
**both (1)**
29:19
**bring (3)**

**13:4;16:13,25**
**bringing (1)**
16:24
**Brooklyn (1)**
21:15
**brought (6)**
11:22;16:7,17;
18:8;25:18;28:17
**bud (1)**
10:16
**business (6)**
10:19;25:14;26:1,
5,11;28:16

## C

**California (15)**
5:3;6:14;13:1;
16:11;17:10,10;18:9;
20:10,10,11,12;25:6,
10,17,22
**California's (1)**
6:11
**called (4)**
14:5;22:7,19,25
**calls (2)**
20:2,24
**came (2)**
6:3;19:21
**can (10)**
12:5;13:19;16:17,
17;22:9;27:10;28:22;
29:24;32:1,2
**candidly (1)**
7:5
**Car (4)**
4:3,14;14:18;22:1
**care (3)**
21:5,6,6
**case (16)**
4:2;5:1,9;6:24,25;
7:7,19,19;9:8;17,21;
9:12;10:22;11:21;
14:8;16:4;30:10
**cause (7)**
5:2;8:23;14:18,22;
17:11;18:15;28:7
**caused (1)**
14:17
**causes (1)**
14:25
**certain (4)**
25:13,14,15;27:5
**certainly (3)**
5:10;28:4;32:3
**challenge (1)**
10:18
**chance (1)**
27:7
**Chapter (5)**
4:7;7:24;8:4;11:6,
25
**charge (1)**

7:7
**charging (1)**
7:6
**chasing (1)**
31:3
**cheaply (1)**
25:2
**check (1)**
30:2
**checked (1)**
31:22
**claim (14)**
5:5;11:22;12:14,
16,17,19,22;13:7,15,
16,17;14:2,3,22
**claims (19)**
4:22,25;6:4,6,7,9,
10,24;7:17;9:16;
12:3,5,7,12;13:6,6,
19;14:4;19:8
**clear (23)**
5:14,14;10:1,13,
22;12:11;14:8;17:6,
9,20,21;21:9,11;23:7;
24:7,8;27:13,24;28:4,
7;29:15;30:16,20
**clearly (5)**
9:24;14:3,24;
19:20;20:8
**CLERK (2)**
4:2;31:21
**client (16)**
10:3;13:9;17:6,8;
21:17;22:15;23:19;
24:7,13,16;26:18;
27:25,25;29:13,15;
30:16
**clients (1)**
9:21
**code (1)**
10:20
**communications (2)**
28:8,18
**compensation (2)**
29:17;30:18
**completely (1)**
25:17
**concern (1)**
28:25
**concerns (2)**
17:20;29:11
**concluded (1)**
32:6
**conduct (1)**
10:9
**conducted (3)**
25:14;26:10;28:22
**conference (2)**
28:22,23
**conflict (3)**
10:20;11:16;23:21
**confusion (1)**
5:16

**connection (2)**
4:23;7:7
**consistent (1)**
21:1
**contact (2)**
6:1;17:23
**contacted (1)**
25:11
**contacting (2)**
15:12;28:14
**contained (1)**
21:10
**context (2)**
8:21;28:9
**continued (2)**
24:9;30:18
**continuing (1)**
6:20
**contradict (1)**
25:17
**conversation (1)**
24:13
**conversations (3)**
23:18;24:12;28:13
**conveyance (1)**
18:12
**conveyances (3)**
6:8;26:4;27:6
**copy (2)**
18:1;32:5
**corporate (8)**
5:24;7:3,19,20;8:2,
4;11:7,21
**corporation (3)**
7:24;25:20,25
**cost (2)**
7:10;17:1
**counsel (33)**
4:17,21;5:12,23;
6:1;7:3;8:10,15,16,
18,18;9:7,7,10,14,15,
15;10:18;15:7;17:16;
21:5;22:18,25;23:2,9,
10,20;24:14;25:22,
22;28:10,14,18
**COURT (107)**
4:4,10,18;5:2,5,7;
6:6,10,13,15;7:23;
8:2,14;9:9,18;10:4,7,
10,14,16;11:5,12,17,
23;12:3,9,15,18,21,
24;13:1,3,5;14:10,13,
19;15:2,6,11,14,16,
20,24;16:1,9,14,16,
21;17:5;18:4,7,16,19,
22;19:3,6,9;20:12,16,
22,23;21:6,7,16,21,
25;22:3,5,11,15;23:1,
3,5,12,15,20,22,24;
24:3,5,7,16,18,22;
25:4,8,17;26:13,21,
24;27:9,12,16,23;
29:3,6,9;30:8,13,23;

31:8,11,13,17,20,24;
32:4
**courts (1)**
5:13
**creditor (9)**
4:16;5:21;6:15;
8:25;9:3;10:24;
17:17;19:19;12
**critical (1)**
13:11
**curiously (1)**
7:14
**current (1)**
11:16
**currently (3)**
13:13;14:23;23:13
**curve (2)**
17:3;18:24

## D

**damages (1)**
13:16
**Daniel (3)**
4:15;29:6,7
**dead (1)**
7:24
**dealing (2)**
27:5,6
**debt (4)**
5:1,9;11:18;14:5
**debtor (20)**
4:14;5:15;6:15;
7:14,15,16,22;8:4;
11:14,20;12:11,12;
18:8;21:6,17;22:2,2;
25:14,19;26:10
**debtors (2)**
25:13,19
**debtor's (5)**
5:12;7:17;8:10;
11:7,7
**defend (1)**
21:22
**denied (1)**
19:11
**dependent (1)**
26:25
**deposition (3)**
10:8,10,15
**depositions (1)**
28:20
**describe (1)**
21:12
**detailed (3)**
26:9;27:1,21
**details (1)**
25:24
**determination (1)**
28:16
**determine (2)**
31:4,5
**determining (1)**

16:6
**dictate (1)**
9:13
**different (5)**
15:21,24;16:1,9,19
**Digby (26)**
4:16,24;5:19;7:9,
12;9:3,10,15;11:18;
13:14,20,24;14:2,8,
17,24;18:14,16,18;
20:6;23:10,11;24:8,
11,15;27:10
**Digby's (2)**
24:10;25:22
**directly (1)**
14:9
**discourteous (1)**
10:6
**discuss (1)**
17:24
**discussion (2)**
27:17,21
**dispute (1)**
10:12
**disputed (3)**
5:5;12:23,24
**disrespect (1)**
29:1
**disrespected (1)**
20:15
**distinct (1)**
14:22
**district (1)**
21:15
**diversion (1)**
6:8
**documentation (3)**
25:9,21;26:8
**documents (3)**
30:20;31:14,18
**doesn't (4)**
8:6;20:6;21:6,6
**dollar (1)**
14:3
**dollars (2)**
4:25;12:22
**done (7)**
8:3;18:6;19:1;20:9,
14;25:23;26:9
**double (1)**
30:2
**down (1)**
22:13
**drives (1)**
11:25
**due (1)**
19:11
**duplicate (2)**
5:22;28:10
**duplication (2)**
7:4,10
**duplicative (1)**
28:5

16:22,22,24

## E

**eastern (1)**
21:15
**echo (1)**
23:7
**effect (1)**
29:20
**effectively (2)**
7:18,20
**effort (2)**
7:4,10
**efforts (1)**
5:22
**egregious (1)**
19:20
**else (1)**
21:7
**end (1)**
19:23
**enemy (1)**
19:18
**enough (2)**
20:17;21:7
**entity (4)**
7:20,24;8:6;27:10
**equity (1)**
21:14
**Esq (1)**
29:7
**essentially (3)**
5:19;8:24;11:1
**estate (19)**
4:21,25;5:25;6:8;
7:12;9:12;10:24;
13:13,22,25;14:1,11,
16;17:1;25:1;27:1;
28:5;30:12,19
**estate's (3)**
6:21;9:1;19:8
**ethical (1)**
9:22
**even (3)**
8:4;15:22;29:24
**event (1)**
24:9
**exactly (1)**
21:12
**examination (4)**
20:17;25:18,19;
31:4
**examinations (4)**
5:18,18;28:23;
29:23
**examine (2)**
16:23;31:1
**examining (1)**
8:19
**except (2)**
9:16;14:10

exception (2)
   17:18;18:25
exist (1)
   8:6
exists (3)
   7:23;10:21;16:14
expenses (1)
   26:1
experience (1)
   21:23
explicitly (1)
   19:13
expressly (1)
   11:20
extent (5)
   9:16;10:7,15;
   27:25;28:8
extremely (1)
   13:11

## F

face (1)
   17:16
faced (2)
   7:2;8:9
fact (10)
   10:23;12:23;17:18;
   19:14;23:20;24:14;
   25:1;26:4,5;30:23
fair (1)
   10:25;28:3
familiar (1)
   20:23
far (3)
   8:19;28:20,23
feel (6)
   14:10;17:11,22;
   27:4;29:12;30:9
feeling (1)
   19:25
feels (3)
   15:16;16:23;17:13
felt (1)
   26:3
few (1)
   21:8
figure (1)
   21:16
file (4)
   7:21;12:12,12;19:3
filed (12)
   5:10;7:13,15,16;
   11:24;12:3,14,17,19,
   20;13:7;25:17
find (1)
   18:19
finds (1)
   16:23
fine (1)
   24:14
firm (15)
   7:2,3,7;15:3,7,17,

21;16:6,14;17:12;
   18:17;28:6,10;29:4,5
first (1)
   11:16
five (1)
   26:11
focus (2)
   8:22,22
formal (1)
   13:6
former (1)
   24:16
four (4)
   20:17;22:13,14;
   26:11
frankly (1)
   19:18
fraudulent (4)
   6:7;18:12;26:4;
   27:6
frivolous (9)
   11:22;12:22;13:15,
   17;14:3;16:10,13,16;
   18:9
front (1)
   20:18
fulfills (1)
   16:22
fun (1)
   19:22
funds (2)
   14:4,5
further (2)
   6:23;29:23

## G

Gary (1)
   4:6
gathered (1)
   24:24
general (3)
   7:2;8:16,18
generally (1)
   8:14
GERSHBURG (55)
   4:15,16,20,24;9:10,
   11,24,25;10:3,11,24;
   11:4,15;12:21;16:5;
   17:2;19:14,19;20:4,5,
   9,13;21:11;22:12,21;
   23:3,5,6,14,18,23;
   24:2,4,6,12,17,19;
   25:3,5,9;26:15,19,20,
   23;27:4,11,15;29:4,5,
   6,7,7;30:11;31:7,9
Gershburg's (4)
   18:17;19:10,22;
   21:1
gets (1)
   20:18
given (1)
   12:13

giving (1)
   15:14
glad (2)
   10:8;11:3
Good (10)
   4:4,9,13,15;21:3;
   22:17,18;23:5,6;
   29:22
gored (1)
   9:6
granted (1)
   31:13
Gregory (1)
   4:8
Group (9)
   4:16;11:18;13:14,
   20;14:9,17,24;18:14;
   20:6
Group's (1)
   14:2
guess (4)
   7:14,14;17:19;
   27:24

## H

half (3)
   7:6,6;20:17
handcuffed (1)
   25:24
happen (1)
   10:11
happened (3)
   6:21;17:10,10
happy (1)
   21:3
harassed (1)
   19:15
hasn't (1)
   11:17
hear (7)
   8:4;11:5,8,9,10;
   23:1,3
heard (2)
   21:7;28:21
HERBST (40)
   4:6,6,7,10,18,19;
   5:4,6,8;6:7,12,14,17;
   8:1,8,14,20;9:11,23;
   11:11,16,23;12:2,8,
   10,16;13:24;19:9;
   20:5;22:20;23:8;
   25:4;27:16,18,20;
   28:3;31:10,15,19;
   32:3
Herbst's (9)
   15:3,6,17,21;16:5,
   14;17:13;23:25;
   29:22
Here's (2)
   15:2;21:16
high (1)
   19:25

himself (1)
   29:24
hire (1)
   22:24;23:2
hiring (3)
   18:14,16,16
hold (1)
   31:17
holiday (1)
   19:2
Honor (79)
   4:6,9,13,15,19,19;
   8:20;9:23;11:2,11,13,
   19;12:2,10,22,23;
   13:12,14,18,23,25;
   14:1,7,17,20,23;15:5,
   10,13,15,19,23;
   16:15;17:4,25;18:6,
   18,21;19:5,9,13,17,
   20,23;20:7,24;21:1,2,
   8,9,14,24;22:7,17,19;
   23:4,6;24:2,4,6;
   26:16,20,23;27:8,15,
   20;28:3,4,5,6;29:5;
   30:5,6;31:9,10,12,15,
   19;32:3
Honor's (2)
   10:24;29:2
hope (1)
   29:2
Hopefully (1)
   30:24
horrible (1)
   19:23
hours (3)
   20:17;22:13,14
huge (1)
   13:21

## I

idea (1)
   7:2
Image (4)
   4:2,14;14:18;22:1
important (1)
   30:13
Inc (1)
   4:3
including (1)
   15:1
incorrect (2)
   11:19;19:12
incur (1)
   5:22
independent (1)
   18:10
individual (2)
   7:19;29:4
information (9)
   5:25;6:2,18;17:5,
   16;21:10;24:23;
   25:13;26:6

initially (1)
   5:11
interest (10)
   6:23;7:11;8:10;9:2,
   4;10:20;11:16;14:24;
   16:25;30:11
interests (1)
   7:18
intimately (1)
   25:12
intimidated (2)
   19:15,16
into (5)
   15:22;24:20;25:10,
   24;26:6
investigated (2)
   15:8;18:3
investigating (1)
   9:1
investigation (1)
   6:19
involved (4)
   25:7,7,12;26:13
involvement (1)
   24:9
ironic (1)
   20:5
issue (7)
   9:25;10:21;11:1,2;
   15:24;16:1,17
issues (4)
   8:22,24;29:11;30:9

## J

job (3)
   8:18;22:12;30:14
Jordan (1)
   27:22
Joseph (2)
   4:9,14
Judge (5)
   9:5;19:15;20:19,
   19;21:11
judges (1)
   8:3
judgment (2)
   10:19;28:16

## K

kind (3)
   8:16;18:24;21:1
kindly (1)
   13:24
kinds (2)
   8:6,9;30:25
knock (1)
   14:3
knowledge (2)
   7:4;24:25
known (1)
   13:9

eScribers, LLC | (973) 406-2250
operations@escribers.net | www.escribers.net

## L

**lack (1)**
9:7
**Lamonica (1)**
4:7
**large (1)**
20:8
**largest (2)**
5:9,21
**last (1)**
21:23
**law (3)**
10:22;29:6,7
**lawyer (2)**
11:7,7
**learn (1)**
14:8
**learned (3)**
5:18,24;6:2
**learning (1)**
17:3
**least (1)**
22:13
**leave (2)**
10:4;19:9
**left (1)**
14:2
**legal (2)**
22:9;28:2
**Leifman (1)**
9:5
**less (1)**
5:14
**letter (2)**
29:15;30:16
**levels (1)**
28:2
**liar (1)**
20:24
**lie (1)**
21:5
**lies (3)**
20:21,21,25
**limited (2)**
8:22,24
**listen (1)**
20:19
**litigate (1)**
20:11
**litigating (1)**
13:1
**litigation (5)**
16:6,11,12;20:9;
25:6
**little (7)**
4:23;5:1;18:2,2,24;
25:24;26:15
**LLC (2)**
11:18;13:14
**location (1)**
28:20

**logical (1)**
7:9
**long (2)**
26:13;30:2
**longer (6)**
23:9;24:10,15;
27:10,12;29:16
**looked (1)**
15:22
**looking (1)**
8:17
**lot (7)**
5:15;7:4,9;8:21,22;
17:5;20:7

## M

**mainly (1)**
11:14
**making (4)**
10:1;17:2;29:15;
30:16
**malicious (1)**
13:18
**Maniscalco (1)**
4:7
**manner (1)**
20:16
**many (2)**
13:19;17:7
**Martin (6)**
30:3,5,5,9;31:24;
32:2
**marvelous (1)**
8:11
**Marylou (1)**
30:5
**master (2)**
9:12,20
**masters (1)**
17:7
**material (1)**
15:14
**Matter (11)**
4:2,23;5:22,23;
12:23;18:3;20:10,11,
12;25:12;26:14
**may (5)**
6:4,24;23:7;32:4,4
**maybe (1)**
24:22
**mean (3)**
8:3;27:24;29:10
**meant (1)**
12:6
**meeting (1)**
11:20
**mentioned (1)**
13:23
**merely (1)**
21:13
**Messer (11)**
4:8;15:2,9,12;16:2,

3,3,21;17:12,12,23
**met (1)**
5:11
**mid (1)**
21:15
**might (4)**
7:16;8:23;9:17;
10:20
**misinformation (1)**
20:7
**mislead (1)**
20:7
**missing (1)**
18:12
**misunderstanding (1)**
25:8
**misunderstood (1)**
24:23
**money (1)**
25:1
**monitoring (1)**
27:17
**monthly (3)**
29:9,21;30:21
**months (1)**
26:16
**more (7)**
7:15;8:8;9:24;
11:19;21:3,8;25:2
**morning (6)**
4:4,9,13,15;23:5,6
**most (2)**
7:3;23:7
**motion (5)**
4:18;12:20,21;
13:24,25
**motions (1)**
18:1
**mouth (1)**
19:22
**much (4)**
11:8;24:22,23;25:1

## N

**name (1)**
4:13
**nature (1)**
29:1
**necessary (3)**
10:7;17:13;28:9
**need (6)**
4:10;10:7;17:6;
23:24;24:5,5
**needed (2)**
30:24,25
**needs (2)**
9:15;24:8
**new (1)**
32:1
**next (1)**
13:12
**ninety-eight (1)**

5:1
ninety-eight-point-whatever-percent (1)
9:3
**nip (1)**
10:16
**noted (1)**
13:24
**number (1)**
4:2

## O

**object (3)**
12:4,5;21:4
**objected (1)**
12:7
**objecting (1)**
11:14
**objection (12)**
5:10;7:13;9:16;
11:17,24;12:6,13,16,
19;13:6,6;17:17
**objections (1)**
7:14
**obligation (2)**
13:13;14:25
**obtained (1)**
13:22
**obviously (2)**
14:6;16:13
**occur (1)**
29:23
**occurred (2)**
25:15,16
**occurrences (1)**
27:5
**off (2)**
30:7;32:2
**Office (1)**
30:3
**offices (2)**
29:6,23
**often (1)**
8:8
**once (1)**
8:15
**one (12)**
8:22,23;9:20;
10:25;11:16;12:5;
20:17;21:13;27:21;
28:6,7;29:22
**ongoing (1)**
26:5
**only (9)**
8:23;9:4;10:22;
12:5;13:23;20:14;
22:4,6;28:6
**operate (1)**
29:25
**opined (1)**
6:22
**oppose (1)**
13:24

**opposed (1)**
8:17
**opposition (3)**
8:12;10:3,6
**order (10)**
22:21;29:14,19;
30:7,21;31:15,21,23,
25;32:2
**otherwise (1)**
27:25
**ourselves (1)**
26:3
**out (10)**
5:2;9:24;14:3;
18:20;19:21;20:9,21;
21:14,17;25:20
**over (5)**
5:1;8:4;14:2;26:11,
15
**owed (1)**
13:10
**own (5)**
5:17;25:23;26:1,1;
29:5
**owned (1)**
14:23
**ox (1)**
9:5

## P

**paid (4)**
14:5;26:19,22;
30:19
**paper (1)**
19:20
**papers (1)**
13:8
**paragraph (1)**
19:13
**part (2)**
20:8;29:3
**particular (2)**
13:7;30:7
**parties (4)**
7:11,16;9:6;10:12
**party (5)**
5:10;10:1,2;12:12,
14
**Passover (2)**
18:23,24
**paying (1)**
27:10
**PC (1)**
29:7
**pending (1)**
30:15
**people (3)**
14:4;25:11,20
**percent (1)**
5:1
**percentage (1)**
14:6

perfectly (3)
21:2;22:18;23:7
perhaps (2)
13:17;20:13
period (2)
25:5;26:17
personal (1)
25:15
petition (1)
5:24
pick (2)
4:11;22:18
picking (1)
22:21
pieces (2)
25:13;26:6
piggybacking (1)
5:20
Pilevsky (1)
27:22
place (2)
27:5;28:24
Please (2)
4:4;32:2
PM (1)
32:6
podium (2)
4:12;27:19
point (9)
5:8;6:3,4;7:12;
9:16,22;13:12;16:12;
20:8
pointed (1)
7:15
poised (1)
5:17
position (7)
7:1;8:5;10:17;
23:25;26:3;27:4;30:3
positions (1)
8:7
possible (1)
13:16
potential (1)
6:7
power (1)
18:13
powers (1)
31:2
pre- (1)
5:23
predecessor (1)
6:25
preference (1)
18:11
premature (3)
15:18;18:3,4
prepared (2)
23:16;27:7
present (3)
16:2,3;26:2
pressure (1)
20:1

presumably (5)
5:5,6;15:16;16:16;
17:12
prevents (1)
15:11
previous (1)
26:11
primarily (2)
9:2;12:13
primary (2)
7:8;9:6
principal (4)
5:12,15;21:18,19
principals (1)
7:16
prior (1)
25:15
probably (2)
23:25;26:15
problem (2)
9:25;21:16
problematic (1)
9:21
proceed (1)
10:14
proceedings (2)
6:1;32:6
process (1)
6:20
professionalism (1)
29:1
proper (4)
10:10,10,14,19
proposed (5)
4:17;30:21;31:25;
32:1,1
prosecution (2)
6:4;13:18
prove (2)
13:17;14:2
proven (1)
21:5
provide (1)
28:18
provided (2)
25:13;26:8
purposes (2)
8:6;10:21
pursue (2)
4:21;13:14,19,20;
14:25;16:4,17,17;
17:13;31:5,5,6
pursued (5)
4:22;8:23,25;9:17;
13:15
pursuing (3)
5:23;6:23;15:17
pursuit (2)
6:4;7:17

## Q

quash (1)

12:20
quickly (2)
19:5,8
quite (5)
7:5;10:22;11:6;
21:9;28:3

## R

raised (1)
28:25
rate (2)
7:5,6
reached (1)
25:20
read (3)
22:21,22,22
reading (2)
10:5;20:13
really (8)
7:22;8:2,5,17,24;
10:17;19:16;26:9
reap (1)
9:6
reason (5)
13:23;18:11;19:10,
13;20:4
reasons (1)
11:14
receive (1)
31:18
received (3)
7:13;25:9,22
receiving (5)
30:15,20;31:13
recognition (1)
9:2
recommendations (1)
28:15
record (6)
12:16,20;21:9,9,
10;24:21
records (2)
26:7;28:5
recover (2)
8:11,13
recovery (3)
7:8,8,12
reduced (1)
7:5
regard (4)
5:16;28:14,25;
30:10
regular (3)
28:13,13,19
relationship (3)
27:13;29:16;30:17
relationships (1)
25:16
release (2)
11:1;23:16
released (3)
9:10,19;30:17

releasing (1)
29:15
remaining (1)
14:5
Rent (4)
4:2,14;14:18;22:1
repeatedly (1)
17:25
reply (1)
19:5
reports (6)
17:8;28:13,19;
29:10,21;30:21
represent (11)
4:14,16;5:8;10:4;
15:3;20:6,6;22:1,4;
24:15;25:19
representation (4)
17:19;19:12;23:8;
28:9
representative (3)
11:20;22:2,6
represented (8)
6:25;7:18,20;
11:17;12:21;19:9;
25:7;30:11
representing (7)
9:1;21:17,18,25;
22:3;23:24;30:6
represents (2)
4:24,25
requests (1)
15:19
require (1)
29:25
research (1)
25:23
respect (7)
8:19;16:18;23:19;
25:12,21,23;31:1
result (2)
13:21;14:21
retain (2)
4:20;15:7
retained (9)
9:8,12,14;15:3;
17:14;20:11;21:19;
23:11;30:25
retaining (1)
7:3
retention (10)
8:15;10:18,21;
17:21;19:11;27:18;
29:14;30:7,10,15
review (1)
21:10
right (11)
8:20;12:2,18;13:2;
15:25;16:15;17:4,15;
18:22;23:23;25:9
ripe (1)
6:4
role (2)

11:6;12:13
room (3)
22:10;28:22,23
Rosenthal (4)
19:16;20:19,19;
21:11
Rule (3)
16:14,18;31:2
ruling (1)
31:8
run (1)
32:1

## S

satisfied (1)
6:23
Saturday (1)
18:23
save (1)
25:1
saying (5)
7:21;8:10;12:6,14;
20:5
scenes (1)
5:20
seeking (2)
8:13;15:7
seem (2)
7:15;28:21
seemed (1)
7:9
seems (2)
18:2;31:3
sense (2)
5:21;7:9
sent (1)
18:1
separate (3)
9:14,15,15
several (3)
25:11,20;26:6
shareholders (2)
14:1,8
sick (1)
20:2
sign (4)
29:14,19;30:7;32:2
signature (2)
31:22,25
significant (1)
14:22
simply (1)
24:21
sitting (1)
22:13
situations (1)
8:9
six (1)
26:16
smallest (1)
17:1
smoothly (1)

30:24
**snapshot (2)**
26:9,10
**sole (2)**
10:1;19:10
**solely (1)**
19:11
**somebody (1)**
9:20
**sorry (1)**
30:5
**sort (1)**
26:9
**sought (2)**
5:19;17:21
**source (1)**
30:19
**sources (1)**
26:7
**speaking (1)**
8:14
**special (14)**
4:7,20;8:15,17;
9:7;10:18;15:7;21:4;
23:9,20;24:14;28:10,
14,18
**specific (1)**
8:16
**specifics (2)**
25:11;26:6
**spelled (1)**
9:24
**spent (2)**
20:13;22:14
**spoken (2)**
13:15;14:21
**standing (1)**
7:21
**standpoint (1)**
7:10
**start (1)**
5:22
**state (1)**
4:4
**stated (3)**
11:21;14:12;19:13
**statement (1)**
29:19
**States (1)**
30:6
**status (2)**
28:13,19
**stay (1)**
20:2
**stayed (2)**
6:16;20:12
**step (1)**
4:10
**still (3)**
9:21;20:2;25:25
**stop (1)**
20:4
**straight (2)**

19:19;20:21
**strongly (3)**
26:3;27:4;29:12
**subject (1)**
31:13
**submit (2)**
31:15,23
**sued (1)**
14:17
**sufficient (1)**
17:16
**suggesting (1)**
16:12
**suggestion (1)**
29:22
**Sunday (1)**
18:23
**sure (6)**
10:1;11:6;16:22;
20:1;28:24;31:23
**surprised (1)**
18:2

**T**

**tail (1)**
31:4
**talking (7)**
13:5,6;14:13;
16:10;17:15,18;
28:17
**target (1)**
7:17
**technical (1)**
21:13
**technically (1)**
12:11
**terms (2)**
9:13;23:8
**terrible (1)**
21:23
**terrorism (1)**
11:21
**therefore (1)**
12:17
**therein (1)**
21:10
**thereof (1)**
9:7
**they've (2)**
6:2;13:16
**thinking (1)**
19:19
**though (2)**
8:15;21:23
**throughout (3)**
6:1,19;26:19
**throw (1)**
19:25
**thus (1)**
6:5
**today (6)**
17:6;18:24;20:2;

21:21;28:21,25
**told (4)**
13:16;20:1,16;22:8
**took (3)**
8:5;26:2;27:5
**top (1)**
20:25
**tort (3)**
13:15,18;14:21
**tortious (1)**
14:17
**totally (1)**
18:10
**touch (1)**
17:11
**transcript (1)**
22:22
**transfers (1)**
25:15
**transpired (1)**
5:14
**treat (1)**
19:18
**treated (3)**
19:18;20:15;21:12
**tremendous (1)**
5:24
**truck (1)**
12:1
**truly (1)**
20:15
**trustee (57)**
4:8,17,21,23;5:10,
11,17,25;6:5,22;7:1,
13,18,20;8:13,15;
9:13,13;10:2,18;
11:15,24,25,25;12:4,
5,7,13;13:13,20;14:6,
23,25,25;15:3,4,6;
16:12,13,22;17:15;
21:2;22:16,17;26:2;
27:23;28:1,14,15,22;
29:10,21,24;30:1,6,
22;31:3
**trustee's (7)**
4:20;7:1;14:19;
28:23;29:23;30:3;
31:1
**try (1)**
19:1
**trying (6)**
16:21;17:20;20:4;
21:20;29:10,13
**two (4)**
9:21;11:13;28:2,20
**type (2)**
6:8;7:19
**types (3)**
6:17,18,24

**U**

**unclear (1)**

10:15
**uncovering (2)**
6:18,19
**under (4)**
9:19;10:20,22;
13:19
**unexplained (1)**
18:12
**United (1)**
30:6
**unless (2)**
4:11;11:2
**unprofessional (1)**
20:16
**up (7)**
4:11;17:3;19:25;
22:8;24:11;25:18;
31:17
**upon (4)**
11:9;26:2,25;30:20
**use (6)**
15:17,20;16:5,5;
17:12,13
**used (1)**
9:5
**UST (2)**
31:22,24
**usually (4)**
7:24;8:9,12,16
**utilize (1)**
17:16

**V**

**various (2)**
13:8;26:7
**view (1)**
9:22

**W**

**wants (2)**
16:4;22:18
**war (1)**
24:20
**way (4)**
10:14;17:22;19:18;
25:14
**weight (1)**
11:8
**what's (5)**
14:4;16:10;22:20,
23,24
**Whereupon (1)**
32:6
**who's (1)**
21:5
**within (2)**
16:18;26:17
**without (3)**
22:12;25:10;26:5
**word (1)**
19:21

**words (2)**
14:14;23:10;24:20
**work (3)**
17:9;18:25;21:3;
25:2;28:2
**works (1)**
18:18
**worth (1)**
15:17
**wouldn't (1)**
8:3
**writing (2)**
19:1,3
**written (2)**
29:9,21

**Y**

**year (1)**
26:16
**years (3)**
8:5;26:11,11

**Z**

**Zilberman (8)**
11:20;19:17,24;
20:15;21:12,22;22:2,
13
**Zilberman's (1)**
19:22

**1**

**11 (3)**
16:14,18;31:2
**12:13 (1)**
32:6
**13 (1)**
4:2

**2**

**2004 (7)**
5:17,18;11:19;
12:20;13:25;20:14;
25:18

**3**

**300,000 (3)**
4:25;12:22;14:3
**304,000 (1)**
4:25
**327 (1)**
10:22
**327e (1)**
30:10
**341 (1)**
25:18
**39 (1)**
19:13

---

**7**

---

**7 (6)**
   4:7;7:24;8:2,4;
   11:6,25